No. 3929

**Second Circuit**

———

DUNKELBERG FARMS, INC., v. MAYS
ET AL.
(AMERICAN NATL. BANK, Intervener)

———

(December 9, 1931.   Opinion and Decree.)
(January 31, 1932.   Rehearing Refused.)

———

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, attorneys for plaintiff, appellee.

Thatcher, Browne, Porteous & Myers, of Shreveport, attorneys for intervener, appellant.

John G. Gibbs, of Shreveport, attorney for defendants, appellants.

McGREGOR, J.   This is a suit brought by the plaintiff, an Indiana corporation domiciled at Fort Wayne, against the defendants, who are residents of Shreveport, La.   The object of the suit is the recovery of two diamond ear screws alleged to be wrongfully in the possession of the defendants, Ralph H. Mays and T. E. Madding.   The petition alleges simply that plaintiff is the owner of the property, is entitled to its possession, and that a writ of sequestration is necessary to protect its interests.   A writ of sequestration was issued as prayed for, and under it the property was seized in the hands of the American National Bank, and the bank then made itself a party to the suit by intervention and third opposition, and asserted its right to the diamonds as pledgee.

The diamonds in controversy were originally the property of Mrs. Anna C. Dunkelberg, who is now the wife of Frank A. Bell.   Some time during the latter part of October or the first part of November, 1928, while the Louisiana State Fair was being held, Frank A. Bell and his wife were in the city of Shreveport, stopping at the Creswell Hotel.   During that time Bell was in possession of the diamonds and pledged them to one Cal Cross for the sum of $400.   Soon thereafter, in the presence of the said Bell, T. E. Madding, one of the defendants, acting for himself and the other defendant, Ralph H. Mays, paid to Cal Cross the $400 for Bell and received the diamonds as collateral security.   Madding then loaned Bell an additional $386.-

50. No writing of any kind was executed. The entire transaction was oral. Madding then delivered the diamonds to the American National Bank for $800, on November 7, 1928, and signed a note for that sum, in which the ear screws were specially pledged to secure its payment. The proceeds of this $800 was paid to Madding to reimburse him for the $786.50 which he had paid out for Bell. This suit was filed on August 3, 1929.

At the outset the defendants filed an exception of no cause of action and of vagueness, urging that the plaintiff could not introduce evidence of its alleged ownership of the property until it had first alleged the basis of its claim. It is the theory of the defense that the ear screws in question were and are the property of Mrs. Bell; that she permitted her husband, Frank A. Bell, to use them as security for the money secured; and that, while the pledge was not executed in writing, she subsequently ratified it in a letter written by her and agreed personally to pay whatever was due. On the other hand, at the trial it developed that the plaintiff claimed to have purchased the diamonds from Mrs. Bell and to have paid for them with capital stock of the corporation. It is further claimed that the corporation loaned them back to Mrs. Bell to be worn by her, and that while she was thus wearing them her husband persuaded her to let him have them for safe-keeping, and that while he thus held them he let Cal Cross have them without the knowledge or consent of his wife, and that, since he had no right or authority to pledge the property in the first place, the American National Bank could not secure a valid pledge from any one to whom Bell or Cross may have delivered the property. The lower court rendered judgment in favor of the plaintiff as prayed for and rejected the demands of the intervener. From that judgment the defendants and the intervener have appealed.

## OPINION

There is only one question at issue in this case, and that is the ownership of the diamond ear screws in controversy. If the plaintiff is the owner, then none of the attempted acts of pledge can prevail against it to deprive it of its property. Dunkelberg Farms, Incorporated, the plaintiff herein, is a corporation organized for the purpose of handling the property belonging to the Dunkelberg family. All the capital stock has always belonged to Mrs. Dunkelberg (now Mrs. Bell), and her two sons, Ralph C. and Charles A. Dunkelberg. Ralph C. Dunkelberg is the president and general manager, Charles A. Dunkelberg is the vice-president, and Mrs. Anna C. Dunkelberg Bell is the secretary-treasurer. The corporation was organized in 1923, but it is testified that it acquired the ownership of the ear screws in 1925 in exchange for capital stock. This was the testimony of both Ralph C. and Charles A. Dunkelberg, taken by written depositions. Mrs. Anna C. Dunkelberg Bell was present at the trial but did not testify except on rebuttal and refused to submit herself for cross-examination by the defendants and intervener. All knowledge with reference to the ownership of the ear screws was in possession of the two Dunkelbergs and Mrs. Bell. It was their duty to be frank with the court, but instead we find them evading all efforts of the defendants and intervener to trace the ownership of the diamonds. It is in evidence that at the time of the trial Mrs. Bell was the owner of only one share of the capital

stock of the plaintiff, and yet she was the secretary-treasurer and had been acting in that capacity since the organization of the corporation in 1923, at a salary of $3,000 per year. Whether she was ever the owner of more than one share does not appear from the record. Counsel for defendants and intervener tried in vain to find out how much stock was issued in exchange for the jewelry in question. They were met with evasive replies on every hand. On one point there is no controversy, and that is that all the stock in the corporation has been issued and is all owned by the three original stockholders. Both the Dunkelbergs testified that Mrs. Bell owns only one share. Ralph C. Dunkelberg, the president, testifies that he owns only one share. That being true, Charles A. Dunkelberg must own nine hundred ninety-eight shares, for it is undisputed that there are one thousand shares in the corporation and that the three stockholders together owned it all. And yet we find this same Ralph C. Dunkelberg testifying in another place as follows:

"Mrs. Anna C. Dunkelberg Bell owns one share of stock in the corporation; the *majority of the balance* is owned by myself and my brother, Charles A. Dunkelberg." (Italics ours.)

Just why he says he and his brother own a majority of the balance, when as a matter of fact they own all of it, we do not know. Charles A. Dunkelberg, vice-president, testifies:

"I do not know exactly how many shares I own, but I do know that I own more than one-third of the shares."

Why is he so uncertain, when, according to his brother's testimony, he owns all the shares except two, or nine hundred ninety-eight?

If the plaintiff is the owner of the diamonds, the witnesses, who are the only stockholders, should be able to fix at least approximately what the purchase price was. They should not be permitted to come into court and say they were purchased for some unknown price and paid for in some unknown amount of stock of the company. Particularly is this true when Mrs. Bell is shown positively to own only one $10 share and no positive testimony is introduced to show that she ever owned more than one share. It is argued that she may have owned more and may have disposed of it since. That is all true, but it would have been very easy to be frank about it if that were true. Furthermore, under the testimony it is easy to gather the inference that when the corporation was first organized in 1923 all the stock was issued to the three stockholders. If that is true, then there was no stock that could have been issued to Mrs. Bell in 1925 for these diamonds.

Plaintiff's petition alleges nothing with reference to how it became the owner of the diamonds and its testimony on this point is entirely too vague, evasive, and indefinite. It resisted all efforts of the defendants to have the petition amended so as to allege when and for how much the diamonds were acquired by it. It has not discharged the burden of proving that it bought and paid for them.

For the reasons assigned, the judgment appealed from is avoided, annulled, and set aside, and it is hereby ordered, adjudged, and decreed that the plaintiff's demand be dismissed as of non-suit, and that all costs of both courts be paid by the plaintiff.