KENNON, Judge.
Alleging that he was pledgee of two diamond ear screws on which pledge there was due $800 with interest, the pledge having been made in October, 1928 by F. A. Bell, and that by virtue of a series of Court judgments, including three decisions of his Court, his right to hold the ear screws until he had been paid this $800 with interest had been established, T. E. Madding filed this suit naming as party defendants F. A. Bell, to whom plaintiff had advanced the $800 and from whom he had received the ear screws in pledge, Mrs. Anna C. Hoover, formerly Mrs. F. A. Bell, who in the three previous suits involving the same jewelry had claimed ownership first for a corporation in which she was a 'stockholder and later as her individual property, and the Continental American Bank & Trust Company, which was in possession of the ear screws as the aftermath of a loan made by it to the pledgee.
Plaintiff prayed for and was granted a writ of sequestration under which the Sheriff of Caddo Parish took possession of the jewelry from the defendant bank. A curator ad hoc was appointed to represent F. A. Bell and Mrs. Anna C. Hoover. On June 15, 1949, a default was entered against “both defendants.” On June 21, 1949, the defendant, Mrs. Anna C. Hoover, filed a motion to dissolve the' writ of sequestration in which she prayed for judgment in reconvention for $200 as attorney’s fees. On the same day she filed an answer in which she denied that any of the former judicial decrees were binding upon her, and specifically denied the validity of the pledge of the jewelry made by F. A. Bell on the ground that as to her it was unauthorized; that the original debt secured was invalid as being a gambling debt; that the pledge was invalid because same was oral and not in writing, and finally pleaded the prescription of three, five and twenty years.
The minutes of Court of June 30, 1949 show that the case was “taken up for trial as on confirmation of default as to F. A. Bell.” The bank made no appearance nor was any notation made that the case was taken up against it “as on confirmation of default;” since the bank was only a stake holder, it seems to be no longer a party at actual interest.
Plaintiff introduced in evidence the records of six separate lawsuits previously filed over this same jewelry pledge transaction in the First Judicial District Court for Caddo Parish, Louisiana, and records involving three of these Caddo Parish suits “as appealed to the Court of Appeals.”
Counsel for Mrs. Hoover moved to try the motion to dissolve the writ of sequestration separate from the merits and the Court ordered trial of -the motion to proceed with the merits “without prejudice to the rights of defendant in the motion.”
Defendant offered in evidence the same Court records previously offered by the plaintiff and presented testimony as to the value of the legal services 'and the facts surrounding the sequestration.
By agreement, the District Attorney rendered judgment and granted orders of appeal in vacation time. In his judgment, the District Court held that while there was a debt shown to be due from F. A. Bell to plaintiff and a default taken as against F. A. Bell, judgment should not be rendered against him because plaintiff did not pray for same, and non-suited plaintiff’s claim as against F: A. Bell. The District Court further held that Mrs. Anna C. Hoover was the owner of the jewelry, and since the pledge by F. A. Bell was not in writing, she, on the theory that she was a third per *186 son to the transaction, was- not bound by the pledge, and gave .judgment ordering the jewelry delivered to her. Plaintiff appealed.
Defendant, Mrs. Ploover, filed an answer to the appeal, praying that the judgment be amended by awarding her damages and attorney’s fees.

On the Plea of Res Adpidicata

This is the fourth time the question of the ownership, possession and right of the pledgee of the diamond ear screws involved in this case has been before this Court. See Hoover v. Madding, La.App., 15 So.2d 557; Dunkelberg Farms, Inc., v. Madding, et al., La.App., 6 So.2d 801; Dunkelberg Farms, Inc., v. Mays et al., 19 La.App. 106, 138 So. 224.
The plaintiff filed in this Court a plea of re-s adjudicata, setting forth that in a previous case (reported in 15 So.2d 557), a final decision had been made decreeing Mrs. Hoover’s ownership of the ear screws to be conditioned on the payment of the debt to plaintiff.
Although the opinion' of this Court, as reported in 15 So.2d 557, 558,. recited that the lower Court in its written opinion held that plaintiff (Mrs. Hoover) could have possession of the ear screws “only after satisfying the amount due which they were pledged to secure,’’ and although our decree affirmed the judgment of the lower Court, the fact remains that the judgment was one of non-suit. We have therefore concluded to overrule the plea of res ad-judicata and pass upon the merits of the case now before u's.
An examination of the record as a whole, including evidence taken on previous trials and the opinions of Judge McGregor, Judge (now Justice) Hamiter and Judge Drew, leads to the following finding of fact.
The defendant, Mrs. Hoover, has been married three times. Her first husband, Mr. Charles A. Dunkelberg, died in 1918. About 1928, she became the wife of F. A. Bell, from whom 'she was divorced in 1932. Her third marriage wa-s to Mr. Hoover.
In 1928, she and her husband, Mr. F. A. Bell, came to Shreveport, Louisana, for the purpose of attending the Louisiana State Fair and stayed for several days or more-at the Creswell Hotel. She was the 'owner of a pair of diamond ear screws valued by her at more than $1000. Mr. Bell had possession of this jewelry, the purpose originally being for safekeeping, but becoming in need of funds, he had secured $400 from one Cal Cross by pledging Mrs. Bell’s earrings. Desiring to raise more money, he and a friend of his Ralph Mays, went to plaintiff, T. E. Madding. Madding delivered $400 to Mays for the purpose of redeeming the jewelry from the first pledge.. After this was done, Bell and Mays returned to Madding, who, after looking over the earrings, accepted them as a pledge to secure a loan of $600, delivering an additional $200 in cash. A few days later, Bell, desiring more funds with which to pay his-hotel bill and use for expenses on the return, trip, secured an additional $200 from Madding, leaving the jewelry in pledge as security for the total loan of $800. No written instrument of pledge was executed by-Mr. Bell or Mrs. Bell.
On March 5, 1929, Bell wrote from Houston, Texas, to Ralph Mays, who acted throughout as a sort of broker and representative of all parties, the following letter r
“1712 Bissonnett Ave.
“Houston Tex.
“Mch 5th 1929
“Mr. Ralph Mays
“Caddo Hotel
“Shreveport La.
“Dear Friend Mays. — We were sorry to miss you about ten days ago when we were-in Shreveport as we came prepared to take-up the obligation against the diamond ear-screws which I left with you during the-state fair last fall.
“On our way back home last week a wire to you was answered to the effect that you were still out of town.
“We are home now and if you will forward the diamonds insured and collect by' express as soon as this reaches you I will-be very much obliged.
“With warm personal regards I am
“Yours truly
“signed/ F. A. Bell
“PW/FAB”
*187 Possibly had Mr. Mays been in town at the time this letter reached Shreveport and forwarded the diamonds insured and collect as directed, payment would have been made and four less cases would have reached the Southern Reporter. However, it was not until April 22d that Ralph Mays returned to Shreveport and wrote to Mr. Bell stating that interest was due on the jewelry .and that he was holding the bank off for a week longer. At the time Mr. Bell received this letter his financial condition was evidently not as good as it was at the time he wrote the above quoted March 5th letter, because he replied to Mr. Mays as follows:
“April 27th 1929
“1712 Bissonnet Ave.
“Houston, Tex.
“Mr. Ralph Mayes
“Caddo Hotel
“Shreveport La.
■“Dear Ralph,
“I find yours of the 22nd here on my return from an absence from Houston and I am glad to hear from you.
■“Regarding the ear-screws, I am not in position just now to take them up, and wish you would refinance them for me, send me word just what the interest is and I will pay that at once.
"“Appreciating your good wishes and assuring you they are fully reciprocated, I am ‘“Sincerely your friend,
“AC B/FAB”
Parenthetically, while defendant, Mrs. Ploover, testified in Court that she did not know that her diamond ear screws were not still in her husband’s possession until she saw a letter which her husband received on .July 8, 1929, in her answer to interrogatories in one of the suits in the record, she testified with reference to the above quoted April 27, 1929 letter that: “I wrote this 'letter at Mr. Bell’s dictation.” Her initials at that time were AC B, as shown by the identifying stenographic initials at the end of the letter.
The next letter in the record is the following one which Mrs. Bell testified that :she herself wrote at her husband’s request:
’1712 Bissonnet
‘Houston Tex.
‘July 6th 1929.
“Mr. Ralph Mayes,
“Caddo Hotel
“Shreveport, La.
“Dear Sir, — Mr. Bell received your letter saying that you had arranged to carry the loan on the diamond ear-screws until August First. He meant to have me write you at once but has been down with malarial fever and so have I. In the meantime your letter was mislaid and rather than look it up in the files this moment I am writing to say that we may not be able to meet the entire amount at that date, however if you will tell us just how you are handling this we will give you something definite that you can depend on.
“I will send this registered so that there will be no slip about its reaching you.
“Mr. Bell is getting better every day now and sends you his warm regards,
“Yours truly,
“signed/ Anna C. Bell
“(Mrs. F. A. Bell).”
Mr. Mays on July 9, 1929 answered this letter stating that the total due on the earrings with interest was $834.75 and suggested that the Bells remit $344.75 and carry over the $500 balance. Mrs. Hoover testified that her husband showed her this letter. .
An examination of the other testimony in the various records leaves us in agreement with the finding of fact contained in the former opinions of this Court. Since these have 'been cited above, we will not burden this opinion with a summary of or quotations from these.
We also agree with the writers of the former opinions that Mrs. Hoover’s testimony was evasive, inconsistent and unconvincing. We find it completely established that Mrs. Hoover not only ratified the act of pledge, as indicated by her July 6, 1929 letter, above quoted, but conclude, based on her evasive and inconsistent testimony and actions and the facts proven in the record, that she was aware either at the time the earrings were delivered or *188 soon thereafter that the jewelry ¡had been pledged by her husband and knew the entire detail's of the transaction.
The District Court based its decision in favor of Mrs. Hoover on the following quoted portions of Article 3158 of the Civil Code:
“But this privilege shall take place against third persons only in case the pledge is proved by some written instrument, in which shall he stated the amount of the debt intended to be secured thereby, and the species and nature of the thing given in pledge; * * *
“ * * * All pledges may be made by private writing of any kind if only the intention to pledge be shown in writing, but all pledges must be accompanied by actual delivery; * *
We find that the conduct and actions of Mrs. Hoover (then Mrs. Bell) were such as to identify her as a participant in the transaction and remove her from the category of a “third person” as contemplated by the above article. Granting, for the sake of argument, that Mrs. Hoover was a “third person” within the meaning of Article 3158 of the Civil Code, we note that the article does not require that there be a formal written act of pledge, but rather the article requires that the pledge be proved “by some written instrument, in whioh shall be stated the amount of the debt intended to be secured thereby, and the species and nature of the thing given in pledge.” The letter of April 27th which Mrs. Bell herself wrote at her husband’s dictation, the letter of July 6, 1929, which Mrs. Bell personally wrote and signed, to Mays and his July 8th reply to her letter of July 6th, which reply she admits was shown to her by Mr. Bell, constitute written evidence stating the exact amount of the debt secured by the pledge and the description of the article pledged. These letters constitute a compliance with the codal re-’ quirements.
When this case was last before this Court, it was held that under Article 3165 of the Revised Civil Code, it was incumbent upon the holder of pledged property to obtain judgment in regular course in the suit in which Bell was made a party. In the-case before us, we find that’this has been done. It is true that the petition fails to name F. A. Bell in the paragraph which specifically asks for the $800 money judgment. However, we find that the prayer asks that “a curator ad hoc be appointed to represent the absentee defendants, F. A. Bell and Anna C. Hoover.” A subsequent paragraph sets forth: “Petitioner further prays that the Continental-American Bank & Trust Company, F. A. Bell and Anna C. Hoover be duly cited to appear and answer this petition; that after due proceedings had there be judgment in favor of petitioner and against defendants, Anna C. Hoover for the full sum of Eight Hundred and no/100 ($800.00) Dollars, with legal interest from October 2, 1928, until paid, and for all costs of this suit, * * *.”
(Italics ours.)
It is noted that the word “defendant” in the last quoted paragraph -is in the plural. Taking this in connection with the prayer “for general and equitable relief,” and with the fact that a curator ad hoc was appointed to represent F. A. Bell (the letter written by the curator to Bell was returned unclaimed), and the fact that the minutes show that a preliminary default was taken out as to “both defendants,” and that the minutes on the day of trial show that the case was “taken up for trial as on confirmation of default as to F. A. Bell,” and that the curator ad hoc who was appointed to represent F. A. Bell accepted service and waived citation, and since the proof in the record is overwhelmingly that F. A. Bell is indebted to the plaintiff as alleged in the petition, we find that the plaintiff is entitled to judgment against him in rem as prayed for.
The plea of prescription was not urged before us. Apparently, counsel concedes the correctness of the District Court’s finding that the plea is unavailable when the obligation is secured by pledge of property in the physical possession of the creditor.
For the reasons assigned, the judgment appealed from is reversed and judgment is now rendered in favor of plaintiff, T. E. Madding, and against defendant, F. A. Bell, *189 in rem, in the sum of $800, with 5% interest from October 2, 1928, until paid.
Judgment is further rendered in favor of plaintiff, T. E. Madding, and against the defendants, Mrs. Anna C. Hoover and the Continental American Bank & Trust Company, maintaining the writ of sequestration sued out herein and recognizing plaintiff’s lien and privilege upon the two diamond earrings sequestered by the Sheriff, of Cad-do Parish, who is hereby ordered to proceed with the sale of same in due course and according to law. The claim of plaintiff and costs of these proceedings to be paid by preference and priority out of the sale of this property. Any balance remaining is to be paid over to defendant, Mrs. Anna C. Hoover, who is cast with costs of both Courts.