## SAMBOLA v. FANDISON.
### No. 16741.

Court of Appeal of Louisiana. Orleans.

Jan. 24, 1938.

Daly & Hamlin, of New Orleans, for appellant.

Yarrut & Stich, of New Orleans, for appellee.

JANVIER, Judge.

The principal issue in this controversy is presented by the reconventional demand. The defendant in the main suit, as plaintiff in reconvention, prays for judgment against Sambola for $835.70, with interest, and for recognition of an alleged lien and privilege on a Chevrolet truck of Sambola, which truck, in the main demand, forms the basis of Sambola's claim for ownership and possession. The fact that the litigation was commenced by the petition filed by Sambola in which he seeks recognition of his ownership of the Chevrolet truck and in which, pending the determination of his claim, he sought and obtained the sequestration of the truck, causes some confusion and makes a clear statement of fact necessary.

Fandison is engaged in this city in the manufacture of brooms, mops, and dusters. Sambola is an itinerant peddler who, at times in the past, had engaged in selling articles of merchandise manufactured by Fandison. For some time Sambola had not engaged in the sale of Fandison's merchandise, but, on or about April 27, 1936, he decided to make a trip out of New Orleans and into nearby states to attempt to sell merchandise manufactured by Fandison, together with certain merchandise furnished by another manufacturer. Fandison agreed to let him have brooms, mops, and dusters to the value of $835.70, with the understanding that Sambola would "peddle" them for such prices as he might obtain and would retain, as his profit, such excess as remained above the value placed thereon by Fandison, to wit, $835.70. Though Sambola was the owner of a Chevrolet truck, instead of using that one he borrowed another truck which belonged to Fandison and left his own in New Orleans. He made the trip accompanied by one Albert Campo, who assisted him, and, after about three weeks, while on his way back to New Orleans, reported to public officials at Lake Charles, La., that he had been "held up" and robbed a few miles out of that city, and that there had been taken from him approximately $1,100, the proceeds of the sales of the merchandise which he had "peddled" on his trip. He returned to New Orleans the next day and reported to Fandison that he could not make payment for the merchandise intrusted to him because he had been robbed of all the proceeds of the said sales.

In the meantime Fandison had taken possession of the Chevrolet truck belonging to Sambola and which Sambola had left in New Orleans, claiming that, when he intrusted his own truck to Sambola and intrusted to him the stock of merchandise, Sambola had pledged to him his Chevrolet truck as security for the return of the other truck and as security for the payment for the merchandise. Very shortly after his return, Sambola, finding that the Chevrolet truck belonging to him was in the possession of Fandison, brought this suit against Fandison claiming ownership of the said truck and seeking the sequestration thereof pending determination of his claim of ownership.

Fandison answered admitting that the truck belonged to Sambola, but contending that it had been pledged to him as security, and, by reconventional demand, he prayed for judgment against Sambola in the sum of $835.70, with interest, and he further prayed for recognition of the lien and privilege resulting from the alleged pledge of the Chevrolet truck.

It is conceded that, as a matter of law, if Sambola was actually robbed of the merchandise or of the proceeds thereof and there was no fault on his part in connection therewith, he is not liable to Fandison for the value of the merchandise, for it is also conceded that the legal relationship between Fandison and Sambola was that of bailor and bailee, and that, therefore, Sambola, as bailee, is not liable for the loss of the funds unless there was, on his part, negligence or fault which had causal connection with the said loss.

Sambola also contends that the Chevrolet truck had not been pledged to Fandison.

It will thus appear that only two questions are actually presented: First—and the most important one—whether there was in reality a robbery; second, whether the Chevrolet truck was actually pledged to Fandison to secure to him payment for his merchandise and the safe return of his truck.

■ The record shows that though Sambola, because of lack of funds after the alleged robbery, had made his way back from Lake Charles to New Orleans by trading a few remaining brooms and mops for gasoline, he was in possession of ample funds only a very short time after he reached New Orleans. On that week-end, he and a friend, Alvin L'Hoste, set out upon a drinking and carousing expedition on which he paid for most of the entertainment and during which he exhibited a large "roll" of currency. L'Hoste, the witness who testified to the exhibition of the large "roll of bills," was shown to have had a police record, and counsel for Sambola argue that his testimony should be given no weight. But Sambola admits that he set out upon the debauch and that he visited several cafés and disreputable houses, and it is quite certain that he could not have done so had he not been possessed of considerably more cash than the "37 cents, something like that," which he contends was all that remained in his possession after the alleged robbery. Even if, during his week-end carouse, he found it possible, in establishments of that kind, to purchase beer at 5 cents a bottle, as he says he did, certainly that small amount of change would not have lasted for more than a very short time. He makes no pretense of having obtained additional funds in New Orleans after his return.

When he reported the robbery to Sheriff Reid in Lake Charles, the suspicions of Sheriff Reid were at once aroused by various statements made by him and by his companion, Campo. Reid's suspicions were first aroused by the fact that they claimed to have purchased gasoline in Many, La., at a certain time, and to have been robbed near Lake Charles only a short time later. Sheriff Reid says that if these statements were true, then they had driven approximately 130 miles in about 45 minutes. He also says that when Campo undertook to go back with him along the highway to show him where the robbery had taken place, "he (Campo) failed to show us the place of the hold-up and he also failed to show us where he claimed the other car had turned around." The sheriff also said that Sambola told him that "he was proprietor of a broom factory in New Orleans." This latter statement was, of course, untrue.

Campo, the companion of Sambola, some years previously, had been convicted in Texas of breaking and entering in the nighttime and had served a term of two years in the state penitentiary.

From all of these facts, and from others which appear in the record, we have no hesitation whatever in approving the conclusion reached below, that there was no robbery in which the funds were taken away from Sambola, and that he has completely failed to establish his contention that he was robbed.

Therefore, since he admits that he sold the merchandise intrusted to him by Fandison, and since he cannot account for the proceeds except through the alleged robbery, which we find did not take place, it is obvious that the judgment against him for the value of the merchandise intrusted to him and for the interest thereon is correct.

The remaining question is whether or not the Chevrolet truck had been pledged by Sambola to Fandison before the former left New Orleans.

Sambola insists that, as a matter of fact, he did not pledge the automobile to Fandison, and that, as a matter of law, there could have been no pledge because there was no written instrument to evidence the pledge, and because there was no delivery of the truck to Fandison when the transaction was entered into, and because, also, the amount of the debt which the pledge might have been given to secure was not definitely set forth.

■ No written pledge was necessary, since no third person was in any way involved. That portion of Civ.Code, art. 3158, in which reference is made to the re-

quirement of proof "by some written instrument" of the contract of pledge shows clearly that proof by written instrument is necessary only where it is intended that the pledge "shall take place against third persons."

In Vivian State Bank v. Thomason-Lewis Lumber Co. et al., 162 La. 660, 111 So. 51, 53, the Supreme Court quoted with approval from an earlier decision, Matthews, Finley & Co. v. Rutherford, 7 La.Ann. 225, in which it had been held that, as between the parties to a contract of pledge, there is not required the formal proof which is necessary where the rights of third parties are involved. The court said: "This contract is open to proof by ordinary evidence. See Pothier, Nantissement, No. 17; Troplong, 108 et seq."

In Ganey v. Cockerham, 11 La.App. 201, 123 So. 194, the Court of Appeal for the Second Circuit considered a case in which it was contended that there was no instrument of pledge, and that there had been no delivery of the pledged automobile. Concerning the first contention, the court said: "As between defendant and plaintiff, the latter had a privilege on the property to secure the payment of the indebtedness, although the agreement of pledge was not in writing (Matthews, Finley & Co. v. Rutherford, 7 La.Ann. 225)."

Therefore, the absence of a written instrument of pledge is of no importance since, if there was a pledge, the only persons involved in the matter were the pledgor and the pledgee.

■ Counsel for Sambola next contends that there was no delivery to Fandison, and that, hence, even if the parties intended to effect a contract of pledge, it was incomplete since article 3152 of the Civil Code requires "that the creditor be put in possession of the thing given to him in pledge, and * * that actual delivery of it be made to him."

But if Fandison is telling the truth, though the automobile was not delivered to him in person, it was left with the pledgor's brother-in-law, Paul Pertuit, who "had to make a trip out in the country" and from whom Fandison was to obtain it on completion of the trip. It was thus that Fandison came into possession of it, and we think that such method of delivery was sufficient to give to Fandison the possession required by the Codal article to which we have referred. In other words, the parties agreed that the pledged article should be temporarily delivered to Sambola's brother-in-law as custodian and caretaker for the pledgee. This was sufficient, since article 3162 of the Civil Code provides that the movable may be delivered into the possession "of a third person agreed on by the parties." See Foote v. Sun Life Assurance Company of Canada, La.App., 173 So. 477. If, then, there was an agreement of pledge, even though it was not in writing, and if the pledged automobile was placed in the possession of the pledgee, even though by delivery to a third person agreed upon, then the privilege resulting therefrom subsists. And whether there was such pledge and delivery is a question of fact for the determination of which we must examine the record. But, in passing, let us dispose of another contention of Sambola, which is that there was no pledge since the amount of the debt was not definitely set forth.

■ On this question counsel for appellant relies upon the requirement of article 3158 of the Civil Code that in the pledge there "shall be stated the amount of the debt intended to be secured thereby." Even if this article has no application where the rights of third parties are not involved, we find here that it was very definitely stated that the pledge was given to secure payment for merchandise valued at $835.70 and was also given to secure the return of a particular thing, to wit, Fandison's truck.

■ To return to the question of fact, Sambola says there was no pledge, and he points to the admitted fact that on certain earlier trips Fandison had not required of him security to guarantee that he would remit the price of the articles sold. But Fandison states that on the earlier trips Sambola had used his own automobile, and that, between those earlier trips and the one which interests us, there had been an interval of considerable duration during which he had had trouble in making collections from other salesmen and peddlers, and that these experiences had led him to exact from Sambola the security which he says he insisted upon. This impresses us as a reasonable explanation and, since we, as well as the court below, have found reason to decide the other and more important question of fact against the contention of Sambola, we see no reason, on this comparatively unimportant issue, to accept as true the statements of Sambola, which statements are contradicted by Fandison. "Falsus in uno, falsus in omnibus."

We conclude that the automobile truck was pledged by Sambola and was delivered in accordance with the pledge.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed at the cost of appellant.

Affirmed.