## CARRERAS v. HOLLISTER'S HEIRS.

### No. 2110.

Court of Appeal of Louisiana. First Circuit.

Oct. 3, 1940.

Argued before LE BLANC, DORE, and OTT, JJ.

Ellis & Bostick, of Amite, for appellant.

A. W. Spiller, of Hammond, for appellees.

DORE, Judge.

The issues in this case are fully stated in our opinion and decree remanding the case for the purpose of completing the record by the inclusion therein of the records of three suits referred to in the answer and made a part thereof. See 195 So. 65. The three records now have been included in the transcript. As stated in the original opinion, there are three principal questions to be considered in the case, namely: (1) Is the plaintiff the owner and holder of the note? (2) If so, is the note and mortgage invalid because of the mental incapacity of Mrs. Hollister at the time of their execution? (3) If plaintiff is entitled to recover, is he entitled to recover the full amount of the note, or only $500, the amount actually paid by him and received by the maker, with interest and attorney's fees?

The record discloses that in January, 1934, David Freeman, alleging himself to be the holder and owner, for a valuable consideration before maturity, of the note in question, filed executory proceedings against Mrs. Hollister. Afterward, Oliver C. Hollister, a major child of the said Mrs. Hollister, the maker of the mortgage note, instituted interdiction proceedings against Mrs. Hollister, alleging that at the time of the execution of the note and mortgage, the said Mrs. Hollister was mentally incapable of managing her own affairs. In this interdiction suit an order was signed appointing Oliver C. Hollister as temporary administrator of the estate of Mrs. Hollister, and, as such, with full power to file such proceedings as might be necessary to preserve her estate. Pursuant to his appointment and in his capacity as temporary administrator of Mrs. Hollister's estate, Oliver C. Hollister instituted injunctive proceedings in March, 1934, against Freeman and the sheriff, in which he sought a preliminary writ of injunction prohibiting each of them from proceeding until further orders of the court, and a judgment perpetuating such writ of injunction, decreeing the said note and mortgage to be null and void on account of the insanity of Mrs. Hollister at the time of their execution, the return of the note and the cancellation of the mortgage, and the recalling and setting aside of the order of seizure and sale. A rule nisi issued, made returnable on March 23, 1934; and, after issue being joined, the rule was heard and a judgment was signed on March 28, 1934, making the rule absolute and ordering a preliminary writ of injunction to issue upon Oliver C. Hollister furnishing bond in the sum of $100, restraining and prohibiting the sheriff and Freeman from proceeding with the sale of the property until further orders of the court. The bond was

filed on April 7, 1934. There is no note of evidence in any one of these proceedings on which this judgment making the rule absolute and ordering a preliminary injunction was based.

On June 20, 1934, Freeman, plaintiff in the foreclosure proceedings, pursuant to a motion filed by his attorney obtained an order to withdraw the mortgage note upon filing a certified copy thereof in the record. The reason given in the motion to withdraw the note was that plaintiff had abandoned his suit, having dismissed it at his cost. We do not find any judgment dismissing the foreclosure proceedings, but as between the parties litigant it appears that the foreclosure proceedings were considered dismissed or abandoned. Oliver C. Hollister, as temporary administrator of his mother's estate, did not pursue or prosecute his suit to have the note and mortgage decreed null and void, and for the return of the note and the cancellation of the mortgage. Neither did he prosecute the interdiction proceedings against his mother. It appears, however, that his mother died on April 17, 1934, thus bringing to a close the interdiction proceedings.

On October 31, 1938, the plaintiff filed this suit against the heirs of Mrs. Hollister, on the same note and mortgage which were the basis of the foreclosure proceedings, alleging himself to be the owner and holder thereof.

■ According to plaintiff's testimony, he loaned $500 to Mrs. Hollister at her request, for which she executed the note for $1,000, with, interest and attorney's fees, secured by a mortgage on property owned by her and situated in the City of Hammond; that this loan was handled by his brother, the mortgage being made in favor of Testard as a nominal mortgagee; that he pledged the note to David Freeman as security for a loan of $700; that, after Freeman had filed a foreclosure suit on the note, and the day after judgment granting a preliminary injunction was signed, he repaid the loan to Freeman, and secured from Freeman the return of the note in question. Not only is this testimony not contradicted, but it is corroborated by a letter dated September 28, 1933, from Mrs. Hollister to plaintiff, wherein she sought a loan of $1,000, with interest, plus a bonus of $500, secured by her property. Upon the receipt of this letter, plaintiff visited the City of Hammond to inspect the premises sought to be mortgaged and,

thereafter, agreed with Mrs. Hollister for the loan and mortgage. Under these circumstances, we must conclude that the plaintiff was the original owner of the mortgage note, and that he pledged this note to Freeman, the latter being the pledgee of the note when he filed the foreclosure proceedings in 1934. We must also conclude that the plaintiff paid his loan to Freeman, and the latter returned the note to the former. We are of the further conclusion that the plaintiff, the present holder and owner of the note and mortgage, is not affected by the judgment on the rule rendered in the suit of Oliver C. Hollister versus Freeman, for the reasons: (1) That he was not a party to these proceedings; (2) that the judgment was only a preliminary judgment; (3) that the foreclosure proceedings were abandoned or dismissed by Freeman; and (4) that the injunctive proceedings were not finally terminated by a trial on the merits. We therefore conclude that the plaintiff, at the time of filing this suit, was, and had been prior thereto, ·the owner of the note, subject, however, to any defense which the maker could urge against the original holder.

■ Having concluded that plaintiff was the original holder and owner of the note and mortgage at the time of filing this suit, we pass to the question of whether or not the evidence shows that Mrs. Hollister was notoriously insane at the time she executed the note and mortgage. The plaintiff questions the right of the defendants to raise this issue in view of the fact that the maker of the note had died more than thirty days prior to the filing of the suit. The record discloses that the interdiction proceedings were filed on February 22, 1934, complaining about the execution of the note and mortgage by Mrs. Hollister when she was insane and seeking her interdiction. This interdiction suit was never tried, on account of the death of Mrs. Hollister on April 17, 1934. Under Articles 403 and 1788 of the Civil Code, defendants have the right to show the nullity of the acts of their mother, since the proceedings for her interdiction were filed prior to her death.

As previously stated in this opinion, Mrs. Hollister, under date of September 28, 1933, wrote a letter to plaintiff seeking this loan. This letter shows that Mrs. Hollister was conducting a private business college in Hammond, and it is com-

posed well and in a businesslike manner. There is nothing in it which would indicate that she was not in her right mind. While she offered, in this letter, to give a mortgage for $1,000 to secure a $500 loan for thirty days, she gave valid reasons therefor, and referred plaintiff to her attorney for further information. Upon plaintiff visiting Mrs. Hollister, pursuant to her letter, there is no evidence showing that she acted abnormally in any way. The notary before whom she appeared testified that at the time of the execution of the note and mortgage he did not notice anything in her acts, manners or words to indicate that she was not of sound mind. The notary testified that he read and explained the note and mortgage to her, even the fact that she was signing a note and mortgage for $1,000, for which she was only receiving a loan of $500, the due date to be thirty days thereafter, and that she answered that she would have the money to pay that back and more. The notary states further that had he perceived anything wrong with Mrs. Hollister he would not have passed the act of mortgage.

The only evidence in the record which could create any suspicion of mental deficiency in Mrs. Hollister is the following: It is shown that at about the time of the execution of the note and mortgage Mrs. Hollister had become infatuated over a confidence man, and very much engrossed in quick money-making schemes suggested by him. Mrs. Hollister's son and daughter, and another witness, testified that she would act "peculiar"; that she would get angry at her daughter; that she was infatuated by the promises of this confidence man; that she would do some "peculiar things"; all of which was unknown to plaintiff.

█ There is, however, no evidence to show that there were any acts on Mrs. Hollister's part so notorious as to make her insanity, if she was insane, generally known as is required in order to annul her acts under Article 402 of the Civil Code. See Reiners et al. v. Humble Oil & Ref. Co. et al., 192 La. 415, 188 So. 47; Butler v. Austin, La.App., 150 So. 449. The first sign, by any medical testimony, of any insanity in Mrs. Hollister is several months after she had executed the note and after she had been treated in Charity Hospital at New Orleans. We are therefore of the conclusion that the defense of insanity at the time of the confection of the note and mortgage has not been sustained.

█ As the plaintiff is the original holder and owner of the note, the defendants, as heirs of the original maker of the note and mortgage, can set up any defenses such as want or partial failure of consideration. Sec. 28 of Act 64 of 1904. Want or partial failure of consideration is not clearly pleaded, but considering the record as a whole, including the allegations contained in the records of the other suits which are made a part of the answer, we feel justified in considering such plea. It is shown by the evidence that the plaintiff made a loan of $500 to Mrs. Hollister for which he received her note for $1,000 secured by a mortgage on her property. It is clear that there was a partial failure of consideration to the amount of $500. Under Sec. 28 of Act 64 of 1904, supra, we limit the amount of recovery to $500, with interest as prayed for from October 3, 1935, and with attorney's fees as provided for in the note and mortgage, and with full recognition of the mortgage rights therein granted.

For these reasons, it is ordered that the judgment appealed from be annulled, avoided and reversed, and it is now ordered that there be judgment herein in favor of Harold Carreras and against the defendants Oliver C. Hollister and Marguerite Hollister Addison, jointly, for the full sum of $500 with eight per cent. per annum interest thereon from October 3, 1935, together with twenty-five per cent on both principal and interest unpaid, as attorney's fees, and all costs of these proceedings, with recognition of plaintiff's mortgage and lien and privilege upon the following described property, to wit: "The East Half of the West Half of Block One-hundred Forty (140), Cates Addition to the City of Hammond, Tangipahoa Parish, La., according to official plat of same duly recorded in the Clerk's Office in and for said parish. Said property measuring 110 feet front on West Church St. by a depth of 300 feet between parallel lines and being part of the same property as shown Co. B 80, page 586 of the records of said parish."

It is further ordered and decreed that, in accordance with law, the said property be sold by the sheriff for the Parish of Tangipahoa, at public auction, after due and legal proceedings had, and that out of

the proceeds of said sale plaintiff be paid, by privilege, preference and priority over all other persons, the amount of this judgment, with interest, attorney's fees and costs.