TALIAFERRO, Judge.
Plaintiff instituted this suit to enforce payment of two promissory notes of the defendants, described as follows, to-wit:
One note originally for $748.80, but which had been reduced by payments to $421.80, dated June 29, 1948, and paraphed to identify it with an act of mortgage on one Chevrolet truck, in plaintiff’s favor;
One note for $927.26, dated June 30, 1948, and payable in monthly installments of $50.00 each, save the last one for $27.26, wherein plaintiff is named payee.
The antecedent history of these two notes is as follows, to-wit:
.On August 4, 1947, one Clyde Taylor sold to Porter Davis, a defendant, a Chevrolet truck for the price of $1,650.00, for which amount defendant executed his one note payable in fifteen monthly installments of $110.00. each, the note being secured by mortgage and vendor’s lien, in notarial form, on said truck. The note was acquired by the Bank of Winnfield & Trust Company, of Winnfield, Louisiana, the day of its execution, and contemporaneously therewith defendant and his wife executed, in favor of the bank as collateral security to said note, another note for $1,300.00, secured by mortgage on lands owned by them in Winn Parish, same being their homestead.
Defendant, Porter Davis, experienced difficulty in meeting the monthly payments on the $1,650.00 note and at the same time pay repair bills and price of replacements for the truck, and appealed to his more fortunate (in worldy goods) brother, Vee Davis, plaintiff herein, for financial aid, which was forthcoming.
On April 4, 1948, there was still due to the bank a balance on the $1,650.00 note, the exact amount of which is not shown, and on that date, by authentic act of sale, defendant, Porter Davis, sold the truck to Vee Davis for an expressed price of $659.87, and he took possession thereof, although Porter Davis was allowed the *649 privilege of using same in going to and from the scene of his work for the plaintiff.The disposition of this note of $659.87 is not shown. It is not in the record. This transfer of the truck to plaintiff, at his request, was intended to protect him in cash advances to defendants for their account, in order 'to meet payments due' the bank and bills of repair-men in Winn-held.
Porter Davis was not satisfied with the modus operandi after the sale of the truck to plaintiff and desired to have title thereto revested in him. On June 29, 1948, plaintiff, to meet his brother’s wishes, and to promote his own interest, re-transferred to him the truck by notarial act, for an expressed price of $748.80, which was the exact amount then due the bank on the original mortgage note. This note was payable in twelve monthly installments of $62.40 each, and was delivered to the bank. It is one of the notes sued on herein. -The purpose, inter alia, in executing the note was to re-finance the balance due the bank in the hope that defendants could the more easily meet the monthly payments.
The day following execution of the re-transfer of the truck, and as a concomitant thereof, plaintiff and his wife and defendant and his wife counseled with Mr. J. A. Nugent, an officer of the Bank of Winn-field & Trust Company, with the view of determining the exact amount due by defendant to plaintiff, and a plan whereby security for payment of said amount could be provided by the former. After considerable discussion and calculations, Mr. Nugent found that defendant owed plaintiff the sum of Nine Hundred Twenty-Seven and 26/100 ($927.26) Dollars. He prepared a note for this amount in favor of plaintiff, payable $50.00 per month, which Porter Davis and his wife, Florence, signed. On the reverse side of this note there was typed by Mr. Nugent the following, which was signed by defendant and his wife, viz,: “Bank of Winnfield & Trust Co. is authorized to deliver the Mortgage note they hold on my truck and the Mortgage note they hold on my home, when I have paid the $748.80 that I am now owing them. It is agreed that if I fail to pay the Bank then I agree for Vee Davis (my brother) to pay the bank and in that case they are authorized to deliver the two mortgage notes to Vee Davis.”
In December, 1948, defendant was again in arrears with the bank and it was then insisting upon full liquidation of the balance of $421.80 due on the $748.80 note. Defendant, Porter Davis, was wholly unable to meet the bank’s demand, and it appears, was purposely avoiding contact with its representative who had been for several days endeavoring to do so. However, one Saturday night in December, defendant drove the truck to plaintiff’s home, near Winnfield, and parked it there. Very soon a representative of the bank, or of a finance company who appears to have had an undisclosed interest in the note, arrived and the matter was discussed and finally closed out by Porter “releasing” the truck to the bank and delivering to this representative the truck keys. Thereafter defendants evinced no interest in the vehicle and evidently considered they had parted with title to it. The release signed by Porter is not in the record. .After the lapse of about a week (the truck in the meantime remaining on plaintiff’s premises), the bank turned it over to plaintiff, who, over a period of some five months paid off fully the balance of $421.80 due the bank. When this was done, the bank delivered to plaintiff the mortgage note, originally for $748.80, and the collateral mortgage note of $1,300.00, above referred to.
Plaintiff possessed, used and operated the truck, apparently as owner, until some time in the Autumn of 1949, when he traded it in on the price of another truck.
Plaintiff has taken the position that the agreement signed by defendant and his wife on the reverse side of the $927.26 note, copied above, has the force of and is in fact and law, a pledge to him of the $1,300.00 mortgage note to secure payment not only of the $421.80 paid to the bank on the truck, but also of the $927.26 note, with interest and attorney’s fees. Recognition of the pledge is prayed for herein.
Answering, defendants allege that they signed the $927.26 note “through mistake *650 and further, that there was no consideration for said note.”
As regards the $748.80 note, defendants plead that same has been paid in full and this being true, the pledge of the $1,300.00 mortgage note, to secure payment of the original price of the truck, ceased to exist because of said payment.
They further aver that on December 11, 1948, the truck was wrongfully, forcibly and illegally seized by plaintiff, who thereafter sold or traded same without legal seizure and without appraisement, and for this reason plaintiff is estopped by law from recovering a deficiency judgment on the $748.80 note, or on any portion thereof.
They further deny that the. $927.26 note, or any part of it, is secured by pledge of the said $1,300.00 mortgage note.
Finally, defendants pray that plaintiff take nothing by this suit and that same be dismissed at his cost.
Judgment in plaintiff’s favor for the amounts he sued for was rendered, less credit of $200.00 received by him for trade-in of the truck. The asserted pledge of the $1,300.00 mortgage note was recognized, and the lands described in the mortgage were ordered seized and sold to pay the judgment. After unsuccessful effort for rehearing, defendants appealed.
Contrary to defendants’ allegations, the truck was not forcefully nor otherwise illegally, seized or taken possession of by plaintiff or the bank’s representative. The above résumé of the facts attending the delivery of the truck to the bank’s representative clearly repels any such assertion. Defendants evidently came to the conclusion, after plaintiff quit advancing money for their account, that they could not pay the balance due on the vehicle, and, therefore, the husband, without protest, then or thereafter surrendered it to the bank, which, we believe, acquired ownership of it at the time and was thereby vested with power to dispose of it to whom it pleased.
As regards the right to recover the' $421,80 paid by plaintiff on the $748.80 note, less the trade-in value of the truck, we are clearly of the opinion that it does not repose in him. He knew of the encumbrances on the truck when he acquired it from the bank, and proceeded to pay same in installments. He did this in the capacity of owner of the vehicle which He used, as his own, for nearly one year before trading it in on another one. The best evidence of plaintiff’s belief that he acquired title to the truck from the bank lies in the fact that he possessed it so long before disposing of it and in not accounting to defendants for the amount he got for it, when he did dispose of it. Surely, if 'he had not considered himself its owner he would not have boldly disposed of it.
The value of the truck when plaintiff acquired it is not .shown. Surely, it was worth as much as was then due on it to the bank or else plaintiff would not have been willing to pay off the indebtedness for it. He was not obligated to do so. The value of its use and extent of depreciation in value over a period of nearly one year is reflected from the fact that in the trade-in only $200.00 was allowed for it.
To allow plaintiff to recover any amount paid by him on the truck after he acquired its ownership in December, 1948, would be grossly inequitable, and, in effect, would allow him to unjustly enrich himself at defendants’ expense. It is reasonable to perceive that he agreed to pay the bank the balance due it in order to own the truck. This brings us to a consideration of the defenses urged against the larger note.
We are quite sure defendants were well informed as to the amount and nature of the items of indebtedness that were consolidated to form the principal of the $927.-26 note. They went to see Mr. Nugent because they had done banking business with him and placed confidence in his fairness and ability to help them out. He testified that this principal was arrived at from data and information provided by the parties themselves; that all concerned concurred in his calculation and so far as he was able to see, were entirely satisfied with results. The fact that defendants *651 signed the note and registered no protest against its correctness until this suit was filed, goes far toward sustaining the thought that their present attitude toward the note is not well founded, but is an afterthought: Of course, if there was lack or failure of consideration in whole or part, as plaintiff is not a holder in due course, such a defense would be tenable as against him. Carre-ras v. Hollister’s Heirs, La.App., 197 So. 815.
Defendants admit that they did owe plaintiff $341.23, which is included in the note, but deny original or subsequent liability for the balance of it, or $586.03.
Between April and June 29, 1948, the period that the truck was in the possession of plaintiff under the act of sale from defendants, plaintiff, on the debt due the bank, paid $340.00, and for repair bills and the price of new tires and tubes for the truck paid .the sum of $268.92. It is defendants’ contention that these two items, amounting to $608.92, were erroneously included in the note because when paid plaintiff was the truck’s owner. The repair bills were incurred and the tires were purchased during said period. They, no doubt, improved the truck’s running condition from which defendants bene-fitted, after re-acquiring" it.
While it is true that on the face of the papers defendant parted with title to the truck to plaintiff, still, as between them, it is not at all certain that that result was in reality desired or intended. To support this point, plaintiff’s own action in freely reconveying the vehicle back to defendants without them paying one penny on the price, stands out rather prominently. Surely, the payment of $340.00 on the price over a period of about ninety days should have, under the circumstances, been chargeable to defendants. The nature of the use of the truck by plaintiff during said period is not made clear by the record. It does show that during the period Porter Davis used the truck in going to and returning from his work. Of course, if defendants felt that they were owing to plaintiff all of these items of indebtedness, it was their privilege to commit themselves unquali-fiedly to liability therefor, and they did so when they signed the note, and with full knowledge of all of the pertinent facts. The defendants have not sustained by proof the defenses urged against this note.
The typewritten statement or agreement on the reverse side of the $927.26 note does not contain either the word “pledge” or “pawn”. 'Standing alone it is somewhat ambiguous, but it was written by Mr. Nugent and signed by the defendants for some purpose and reason. That purpose and that reason are made quite clear by the testimony of Mr. Nugent and that of the plaintiff and his wife. This testimony read in connection with the typing on the note, is convincing of the fact that if plaintiff paid off the $748.80 note, thus satisfying the bank’s claim on the truck, that note and the $1,300.00 mortgage note were to be delivered to him as collateral security to both notes. This adjustment of the financial differences between the brothers was then thought to be the best to be had. It was believed that plaintiff would thereby be fairly well secured through the pledge of the $1,300.00 note for all advances in cash to defendant or for h‘is account theretofore made or that should be thereafter made.
Article 3133 of the Civil Code reads: “The pledge is' a contract by which one debtor gives something to his creditor as a security for his debt.”
As related to movable effects-, it is called “pawn”. Civil Code, Article 3134.
Article 3152 of the Civil Code ordains that for the consummation of a pawn, delivery of possession to the pledgee is indispensable. The possession here mentioned may be through an agent -of the pledgee or a third person not necessarily an agent eo nominee. See: Succession of Lanaux, 46 La.Ann. 1036, 15 So. 708, 25 L.R.A. 577; Sambola v. Fandison La.App., 178 So. 276.
In Succession of Bier, 145 La. 722, 82 So. 868, as disclosed from paragraph 2 of the syllabi, it was held: “Where the holder of mortgage notes pledged as collateral with a bank executed an instrument reciting *652 that he pledged the notes or his equity in them to another bank as collateral security, such holder pledged a note subject to the prior pledge in favor of the first bank.”
And in Herber v. Thompson, 47 La.Ann. 800, 17 So. 318, 321, it was said by the Court: “We know of no law which prevents a party who holds pledged property from agreeing to hold the same, by the consent of creditor and debtor, for the former, after the extinguishment of his own debt.”
It would appear clear that the agreement of these parties, in-the presence of Mr. Nugent, meets the requirements of the Code and of the line of decisions cited above. Regardless of the fact that the bank held the $1,300.00 note as collateral security to the note against the truck, this collateral note remained and continued to be the property of Porter Davis and his wife, and they could legally pledge it to plaintiff or any other creditor to secure other obligation, but not to- the prejudice of the bank, the first pledgee. So long as the bank was unpaid, it held possession of the pledged note for itself and as agent of the plaintiff, or as detainer thereof for his account.
It was not necessary to the efficacy of the contract of pledge involved herein that it be in writing. Article 31S8 of the Civil Code. In order to affect the rights of third persons this sort of contract must be in writing. So, should , we , entirely eliminate from consideration the typed agreement on the $927.26 note, the binding effect of the contract of pledge is unimpaired, for it is shown beyond dispute that such a contract was intended to be created by the parties thereto.
For the reasons herein given, the judgment from which appealed is annulled, avoided and reversed to the extent and insofar as defendants are condemned to pay to plaintiff the sum of Four Hundred Twenty-One and 80/100 ($421.80) Dollars, less Two Hundred ($200.00) Dollars, with interest and attorney’s fee, but, in all other respects, said judgment is affirmed with costs, save those incurred by this appeal, which are assessed against the plaintiff.