460 So.2d 663 (1984)
CITIZENS BANK & TRUST CO.
v.
CONSOLIDATED TERMINAL WAREHOUSE, INC. W.R. Thompson, Jr. and Scaffolding Rental & Erection Service, Inc.
No. CA 83 1210.
Court of Appeal of Louisiana, First Circuit.
November 20, 1984.
Rehearing Denied December 28, 1984.
*666 Stephen P. Strohschein, Baton Rouge, for plaintiff-appellee Citizens Bank & Trust Co.
Scott H. Crawford, Baton Rouge, for defendants-appellees Consolidated Terminal Warehouse, Inc. and W.R. Thompson, Jr.
Leonard L. Kilgore, III, Baton Rouge, for defendant-appellant Scaffolding Rental & Erection Service, Inc.
Before GROVER L. COVINGTON, C.J., and LOTTINGER and JOHN S. COVINGTON,[*] JJ.
LOTTINGER, Judge.
This is a suit by Citizens Bank & Trust Company of Plaquemine against Consolidated Terminal Warehouse, Inc., W.R. Thompson, Jr., and Scaffolding Rental & Erection Service, Inc. to collect a number of promissory notes and debts represented by invoices which were pledged to secure those notes. The bank's claims against Consolidated Terminal Warehouse, Inc. and W.R. Thompson were settled by summary judgment in favor of the bank. The bank proceeded to trial against Scaffolding Rental & Erection Service, Inc. and obtained a judgment in its favor from the trial court. Scaffolding Rental & Erection Service, Inc. has perfected this appeal.

FACTS
Mr. W.R. Thompson, Jr. (Thompson) was one of several stockholders in King Lumber Industries, Inc. (King Lumber). King Lumber began selling scaffolding materials to Scaffolding Rental & Erection Service (Scaffolding) on open account, beginning sometime in 1977. King Lumber had a banking relationship with Citizens Bank & Trust Co. (Citizens) whereby King Lumber would accumulate a number of invoices from sales to Scaffolding and pledge them to Citizens as security for a promissory note.
In 1980, King Lumber began having financial difficulties. A new company, King Hardwood Imports, Inc. (King Hardwood), of which Thompson was also a shareholder, purchased the balance of King Lumber's inventory and also acquired Scaffolding's credit account. King Hardwood continued to sell materials to Scaffolding and continued to pledge the invoices to Citizens in the same manner as King Lumber had done.
In dealing with both King Lumber and King Hardwood, Scaffolding would make payments on its account directly to Citizens. In all of these dealings, Thompson was the sole representative of both King companies.
In July of 1981, trade between Scaffolding and King Hardwood halted and Thompson began operating with a new company called Consolidated Terminal Warehouse, Inc. (Consolidated), which was unrelated to the King companies. Mr. Thompson was a fifty percent shareholder, and the sole sales representative of the company in dealings with Scaffolding.
Consolidated did not initially have enough capital to maintain a sufficient inventory to service the needs of Scaffolding, so Thompson approached Scaffolding with a proposition. On July 20, 1981, Scaffolding advanced $60,000 to Consolidated to be used to purchase inventory to service Scaffolding's needs.
As Scaffolding purchased materials from Consolidated, Thompson would type out invoices and pledge them to Citizens as security for promissory notes in the same manner as had been done by the King companies. In December of 1981, Scaffolding *667 paid some of the invoices directly to Consolidated, leaving a balance of $62,296.74. When Citizens attempted to collect this amount, Scaffolding sought to offset the $60,000 advance to Consolidated against the pledged invoices.
Thereafter, Citizens filed suit to collect this amount from Scaffolding, as well as the outstanding promissory notes from Thompson and Consolidated. In the meantime, Consolidated began having financial difficulties and Thompson began selling for Kennison Forest Products (Kennison). Thompson and Scaffolding entered into an agreement whereby Scaffolding would purchase products from Kennison through Consolidated as agent for the sale. Any commissions due Thompson or Consolidated were to be deducted from the purchase price and applied to the $60,000 due Scaffolding.
At trial, Citizens obtained a summary judgment in its favor against Consolidated and Thompson. Citizens sought to execute this judgment by garnishing the commissions due Consolidated for sales of Kennison products and retained by Scaffolding.
After trial on the merits, judgment was entered in favor of Citizens and against Scaffolding on both the principal demand and the garnishment proceedings, which had been challenged by Scaffolding. Scaffolding has perfected this appeal to challenge the validity of the court's ruling and asserts that the trial court erred:
(1) in finding that the invoices had been validly pledged to Citizens;
(2) in finding that the pledges were not subject to the prior agreement between Scaffolding and Consolidated, because a pledgee can have no greater right in the thing pledged than the pledgor possessed;
(3) in finding that the bank was an "innocent party" in regards to the transactions involved;
(4) in denying Scaffolding's motion for directed verdict;
(5) in finding that Scaffolding had a duty to inform the bank of the $60,000 alleged advance; and
(6) in finding that Scaffolding had in its possession any claim or credit of Consolidated or Thompson which was subject to seizure.

I
In its first assignment of error, Scaffolding contends that the trial judge erred by holding that the invoices were validly pledged. Scaffolding contends that a written act of pledge was required and that written notice to Scaffolding, as debtor of the pledged debt, was also required.
As goods were sold by Consolidated to Scaffolding Mr. Thompson would type invoices for the materials which were sold and delivered. Thompson would bring these invoices to Scaffolding for initialing as an acknowledgment of receipt of the materials listed. After a number of these invoices would accumulate, Thompson would prepare a promissory note for the aggregate amount of the invoices, and take the invoices and note to Citizens. Citizens would loan Thompson the amount of the note and accept the invoices as security for the loan. As the invoices would become due, Citizens would call Scaffolding for verification of the invoices and mail two copies of each to Scaffolding. This is the same manner in which the invoices were pledged to Citizens by both King companies except for the initialling and verification calls, which were not utilized when the King companies pledged the invoices.
On the bottom of each invoice appeared the following language:
For value received, we hereby pledge and convey the within invoice to the Citizens Bank & Trust Co., Plaquemine, La., as collateral attached to my note with full power and authority for and in my name to collect the amount of said invoice and you are hereby requested to remit to them direct.
 CONSOLIDATED TERMINAL
 WAREHOUSE, INC.
(signed/W.R. Thompson, Jr.)
In addition to this, on the back of each note appeared language that the note was secured *668 by the pledge of Scaffolding's invoices and also included a list of the numbers of the invoices pledged.
To have a proper understanding of the law in this area, we must separate the requirements for the validity of a pledge from those pertaining to the liability of the debtor of a pledged debt to the pledgee of that debt.
In dealing with the formal requirements of a pledge, the Civil Code and its ancillaries divide the pledge of movables into three categories: the pledge of corporeal movables (La.Civ.Code arts. 3152, 3154); the pledge of incorporeal movables evidenced by a written instrument (La.Civ.Code arts. 3153, 3155, and 3158); and the pledge of incorporeal movables not evidenced by a written instrument. (La.R.S. 9:4321 et seq.)
Scaffolding contends that the pledge in this case was that of an incorporeal movable not evidenced by a written instrument, and as such, a written act of pledge was required; that the invoices were merely billing reminders and account statements and did not constitute written evidence of the pledged debt; and that what actually was pledged was the underlying debt, which is not evidenced by a written instrument. Citizens, on the other hand, claims that the invoices constitute written instruments and no written act of pledge was required.
For the following reasons we need not decide whether the invoices in this case constitute written instruments as contemplated by the Civil Code.
Neither the formal requirements for the pledge of incorporeal movables evidenced by a written instrument nor that of an incorporeal movable not evidenced by a written instrument require a written act of pledge. The author in Louisiana Legislation of 1938, 1 La.L.Rev. 80, 110 (1938), in analyzing the law of pledge after the enactment of La.R.S. 9:4321-4324, summarized the formalities required for the pledge of corporeal and incorporeal property as follows:
1. The pledge of corporeal property must be made by an act of pledge containing the amount of the debt to be secured, and an adequate description of the property given in pledge, in addition to actual delivery of the thing pledged. La.C.C. art. 3158.
2. Incorporeal rights evidenced by written instruments such as promissory notes, bills of exchange, and the like are pledged by delivery only, no act of pledge being necessary, and should these rights be contained in instruments not negotiable, notice to the debtor thereof is necessary. La. C.C. art. 3158.
3. Incorporeal rights not evidenced by written instruments may be pledged by act of pledge in which shall be stated the amount of the debt to be secured and an adequate description of the right pledged. No delivery of the right is necessary, for none can be made, there being no written evidence thereof. La. Act 95 of 1938. (La.R.S. 9:4321-4324).
The formal requirements for pledging an incorporeal movable not evidenced by a written instrument are governed by La.R.S. 9:4321-4324. There exists no statutory requirement for a written act of pledge, and this type of right can be pledged "in the same manner as other property." La.R.S. 9:4321. Other movable property, whether corporeal or incorporeal and evidenced by a written instrument, is susceptible of oral pledge, and a written act of pledge is not required. La.Civ.Code arts. 3133 and 3158; State v. Ackal, 290 So.2d 882 (La.1974); Davis v. Davis, 50 So.2d 647 (La.App. 2nd Cir.1951); Sambola v. Fandison, 178 So. 276 (La.App. Orleans Cir.1938). The reference to "other property" in La.R.S. 9:4321 must refer to the pledge of corporeal movables because there exists no written instrument susceptible of delivery, as in the pledge of an incorporeal right evidenced by a written instrument. As such, to perfect a valid pledge of an incorporeal not evidenced by a written instrument, what is required is an act of *669 pledge, either oral or written. The act of pledge in this case, being the agreement between Citizens and Consolidated, meets these requirements as it was clear that the invoices were being pledged for the amount of the promissory note.
A pledge of an incorporeal evidenced by a written instrument is valid upon delivery of the written instrument to the pledgee without further formality, provided that, where the pledge is of an instrument not negotiable in form, the debtor must be notified in writing. La.Civ.Code arts. 3158 and 3160. Thus, a written act of pledge is not required to perfect a pledge of this type of right. The only requirements are delivery of the writing to the pledgee and notice to the debtor, if the instrument is non-negotiable. As will be set out below, we find that the writing on the invoices in the instant case constitutes sufficient notice to the debtor, Scaffolding, and since the invoices were delivered to Citizens, these requirements were met.
As can be seen, regardless of whether the invoices constitute a writing or not, a written act of pledge was not required and a valid pledge was perfected.
However, written evidence of the pledge is required for the pledgee's privilege to be effective against third parties. La.Civ. Code art. 3158. Such written evidence must state the amount of the debt to be secured, and the nature of the thing pledged, id. This does not mean that the act of pledge must be in writing, only that the pledge be proved by some written evidence which states the amount of the debt and describes the thing pledged. Madding v. Hoover, 44 So.2d 184 (La.App. 2nd Cir. 1950).
It is questionable whether "third persons" as used in Article 3158 includes the debtor of a pledged debt or claim, such as Scaffolding in the present case. Rather, Articles 3157 and 3158 deal with the pledgee's privilege and preference as to other creditors of the pledgor. Article 3157 specifically limits itself to the privilege of the creditor as against other creditors and Article 3158 further defines this privilege. Further support for this conclusion can be found in the fact that special provisions provide protection to the debtor in the form of written notice of the pledge. La.Civ.Code arts. 3158 (paragraph 2) and 3160; La.R.S. 9:4323.
Regardless of this, we conclude that the pledge language typed on each invoice, as provided above, as well as the language on the back of each promissory note, which provided a list of the invoices pledged, as well as the amounts of each invoice, and the total amount secured by the pledge, adequately meets the requirements of Article 3158. It is clear from the writings that what was pledged were the invoices and the total amount of those invoices was the amount of the secured debt.
As can be seen from the above, a valid pledge was perfected as no written act of pledge was required.
The second aspect of this assignment of error concerns the affect of the pledge on Scaffolding as debtor of the pledged claims, and the sufficiency of the written notice of the pledges provided to Scaffolding. When pledging an incorporeal claim on another person, whether the claim be evidenced by a written instrument or not, the debtor of the claim must be given written notice of the pledge to be held liable on the claim. La.Civ.Code arts. 3158 and 3160; La.R.S. 9:4323. The only exception to this rule is where the claim is represented by a negotiable instrument, in which instance, the pledge is perfected upon delivery of the instrument to the pledgor and no notice is required. La.Civ.Code art. 3158.
Scaffolding contends that the language on the invoices, as provided above, was insufficient notice, and a cover letter or special written notice was required.
As can be seen from the language, it clearly states that the invoices were pledged to Citizens and that Scaffolding was requested to pay the amounts due under the invoices to Citizens instead of Consolidated.
*670 Although not all of the invoices were initialled, Scaffolding employees had initialled the majority of these invoices, and two copies of each invoice were mailed to Scaffolding as they became due. These facts convince us that this language constituted adequate notice to Scaffolding, especially when also considering the number of invoices in which Scaffolding came into contact (in excess of thirty) and the previous dealings between Scaffolding and the two King corporations, also represented by Thompson, which handled the invoices in the same manner as Consolidated.
For these reasons we find that a valid pledge was perfected and that Scaffolding received adequate notice of the pledge of its invoices.

II
In this second assignment of error, Scaffolding alleges that the trial judge committed error in finding that the pledge was not subject to the prior agreement between Scaffolding and Consolidated regarding the $60,000 advance to Consolidated. In support of its allegation, Scaffolding contends that the $60,000 advance was to be treated as a credit for future purchases from Consolidated, and Consolidated could not pledge to Citizens the right to collect this money, as Consolidated had no right to do so itself. In short, Scaffolding alleges that Consolidated could not pledge a greater right than it had.
In his oral reasons for judgment, the trial judge found that, based on the past dealings between the parties, the parties intended that the same situation which had existed in regards to the King companies, Scaffolding, and Citizens would continue in regards to Consolidated. Based on this intent, and the manner in which the $60,000 was handled by Scaffolding in its accounting system, the trial judge rejected Scaffolding's argument that the $60,000 was to be treated as a credit for future purchases, and found that the parties intended that the invoices be pledged in the same manner as had been done in the past. By rejecting this argument, the trial judge, without expressly providing so, found the $60,000 to be a loan by Scaffolding to Consolidated. Since this was a loan, there was no agreement which could affect the pledge of the invoices to Citizens. This holds true as well for Scaffolding's argument that this case is analogous to an assignment of accounts receivable where such an assignment would have been subject to any previous agreements between Scaffolding and Consolidated. La.R.S. 9:3108. As this was a loan, there was no agreement which would affect either a pledge or an assignment of accounts receivable.
These findings of fact by the trial judge are neither manifestly erroneous nor clearly wrong.
Scaffolding also contends that the evidence regarding the transactions involving the King companies is irrelevant and immaterial to the transactions involving Consolidated. Whether evidence is relevant or not is within the discretion of the trial court and its ruling will not be disturbed absent a clear abuse of discretion. Ketcher v. Illinois Central Gulf Railroad Company, 440 So.2d 805 writ denied 444 So.2d 1220, 444 So.2d 1222 (La. 1984). Our review of the record convinces us that the transactions involving the King companies were relevant and probative in establishing the intent and understandings of the parties in regards to Consolidated. The trial judge did not abuse his discretion.
At this point we deem it necessary to discuss and distinguish this case, involving the pledge of accounts receivable, from a situation involving an assignment of accounts receivable pursuant to the Assignment of Accounts Receivable Act found in La.R.S. 9:3101-9:3111.
Under the Assignment of Accounts Receivable Act, a properly perfected assignment, executed in conformity with the strict requirements of the Act, operates as an "assignment, sale or pledge" of the accounts receivable so assigned. La.R.S. 9:3102 A. The assignee of a properly perfected assignment of accounts receivable is given a "superior claim to the accounts *671 assigned and their proceeds" as against creditors who subsequent to the assignment perfect their interest or security in the account or its proceeds. La.R.S. 9:3102 C. This security interest distinguishes this type of assignment from an assignment of other rights or credits which create no security interest, but result in a transfer of title between the assignor and assignee. Scott v. Corken, 231 La. 368, 91 So.2d 569 (1956).
"Assignment" is defined in the act as including any "assignment, sale, or pledge...of any account and its proceeds...". La.R.S. 9:3101(2). La.R.S. 9:3109 A provides that the Assignment of Accounts Receivable Act is not the exclusive method of "assigning" accounts receivables, and the act does not have the effect of repealing any other authorized method. One other such method of "assigning" accounts receivable, as intended in the act, is a valid pledge perfected pursuant to the rules governing pledge. Accounts receivable, being incorporeal movables, can be pledged in the same manner as any other incorporeal movable, in addition to being subject to assignment under the Assignment of Accounts Receivable Act. As we found above, a valid pledge was perfected in this case. There was no attempt to assign the debts owed by Scaffolding in conformance with the Accounts Receivable Act.

III
In its next assignment of error, Scaffolding contends that the trial judge erred by finding and basing his decision on the honesty of Citizens throughout the transactions between the parties.
While the trial judge did mention that it was his opinion that the bank was an innocent party in these dealings, this was not the basis of his decision. The judge's decision, as supported by the record, was based on the law of pledge, the intent of the parties, the past relationship between the parties and the King companies, and his rejection of the argument that the $60,000 was to be treated as an advance.

IV
The next issue raised by Scaffolding is whether the trial court erred in denying Scaffolding's motion for directed verdict after Citizens submitted its case in chief. The motion was based on the contention that Citizens had failed to establish the existence and amount of the debt which was secured by the pledged invoices. Furthermore, as the argument goes, since the principal obligation was not established, the pledge, being accessory to the principal obligation, cannot exist alone.
According to the provisions of La. Code Civ.P. art. 1810[1], in a non-jury trial, after the plaintiff has completed the presentation of his evidence, any party may move for a dismissal of the action as to the plaintiff on the ground that upon the facts and law, the plaintiff has shown no right to relief. In non-jury cases, the standard for the trial judge in ruling on a motion for directed verdict is to weigh and evaluate all of the evidence and render a decision based on the preponderance of the evidence. Semien v. PPG Industries, Inc., 413 So.2d 956 (La.App. 3rd Cir.1982); Bryan v. Varnado, 394 So.2d 1321 (La.App. 1st Cir. 1981).
Furthermore, the trial judge is granted much discretion in determining whether or not a motion for directed verdict should be granted. Chandler v. Fuqua, 420 So.2d 1348 (La.App. 3rd Cir.1982); Burrell v. Kirkpatrick, 410 So.2d 1255 (La.App. 3rd Cir.1982).
At trial of the instant case, Citizens introduced the promissory notes which were secured by the pledged invoices, as well as the invoices themselves. Some of the notes were marked paid and some were not. However, Citizens offered no testimony or other evidence to establish the existence of any outstanding debt or the *672 amount of any indebtedness due by Consolidated. Nevertheless, we are of the opinion that the notes themselves, in addition to the bank employees' testimony regarding the perfection of the notes and the pledge of the invoices, was sufficient evidence to establish the debts and constituted grounds to deny the motion for directed verdict.
In a suit for the collection of promissory notes, it is sufficient for the plaintiff to produce the notes sued upon to make out his case. Humphrey v. Humbrecht, 427 So.2d 461 (La.App. 5th Cir.1983), writ denied 433 So.2d 1052 (La.1983); Fontenot v. LaFleur, 281 So.2d 868, (La.App. 3rd Cir. 1973), writ denied 284 So.2d 336 (La.1973). Once the notes are introduced into evidence, the burden shifts to the defendant to establish the non-existence or extinguishment of the obligation. Humphrey v. Humbrecht,supra; La.Civ.Code art. 2232.
Therefore, since the notes themselves were properly introduced into evidence, the trial judge did not abuse his discretion in denying Scaffolding's motion for a directed verdict. For these reasons, no error was committed.

V
In its fifth assignment of error, Scaffolding contends that the trial judge committed error in holding that Scaffolding had a duty to inform Citizens of the $60,000 advance to Consolidated.
In his oral reasons for judgment, the trial judge stated that "it was mandatory by Mr. Thompson and or Scaffolding that the bank be made aware of any change in (sic) situation, but the bank was not notified." Scaffolding contends that no such duty existed and to impose such a duty on an account debtor would be to impose an impossible burden on account debtors.
As previously mentioned, the trial judge rejected Scaffolding's argument that the $60,000 was to be treated as an advance for future purchases. In so finding, the trial judge must have found that the $60,000 was a loan between the parties. Since the trial court found this money to be a loan, whether a duty to inform Citizens existed or not is of no moment. Even if Citizens had been informed of the loan, the pledge would not have been affected and the result of this case would be unchanged.

VI
In its final assignment of error Scaffolding contends that considering the judgment of the trial court in favor of Citizens, Scaffolding has nothing in its possession which could be considered a claim or credit of Consolidated which would be subject to seizure by Citizens.
After suit was filed in this matter, Scaffolding and Thompson entered into an agreement whereby Scaffolding would purchase materials from Kennison through Consolidated, who would act as agent for the sale. Kennison Forest Products would then bill Scaffolding directly and clearly set forth any commission due Consolidated. Scaffolding would pay Kennison directly and deduct from the price any commissions due Consolidated. The amount of these commissions were then applied towards repaying the $60,000 alleged advance.
After Citizens secured a summary judgment in its favor against Consolidated and Mr. Thompson, it filed a garnishment petition, which was served on Scaffolding, along with some interrogatories and a notice of seizure. This garnishment was an attempt to seize the retained commissions as property of Consolidated held by Scaffolding. Prior to service of the petition and interrogatories, Scaffolding had retained $13,685.58 in commission and applied this amount towards repayment of the $60,000.
After judgment in favor of Citizens and against Scaffolding, the trial judge held that any commission retained by Scaffolding prior to service of the garnishment petition and interrogatories was not subject to garnishment and operated as an automatic compensation under La.Civ.Code art. 2207, et seq. to diminish Consolidated's $60,000 debt to Scaffolding. As to any commissions retained subsequent to service of the garnishment petition and interrogatories, the trial judge held that these commissions *673 were subject to seizure and garnishment, and not subject to compensation.
Scaffolding now alleges that since the trial court judgment was against Scaffolding on the principal demand, and Scaffolding was not able to offset the $60,000 against pledged invoices, Consolidated was indebted to Scaffolding at the time suit was filed. As such, Scaffolding suggests the $60,000 owed by Consolidated was demandable at the time of the agreement and as soon as the commissions due Consolidated were retained by Scaffolding, an immediate compensation or set-off resulted to reduce the $60,000 debt by the amount of the commission retained.
In order for compensation or setoff[2] to be applicable, there must be the contemporaneous existence of distinct debts, each equally liquidated and demandable. Hartley v. Hartley, 349 So.2d 1258 (La.1977); Hamilton v. Hamilton, 421 So.2d 291 (La.App. 1st Cir.1982).
In the instant case, until a final judgment is entered, the status of Scaffolding's claim against Consolidated is indeterminate and uncertain. What Scaffolding possesses is a potential claim for $60,000, contingent on a final judgment denying Scaffolding the right to offset the $60,000 against the pledged invoices. If Scaffolding should obtain a final judgment absolving itself of liability to Citizens and permitting the $60,000 to be offset against the invoices, Scaffolding would have no claim against Consolidated. As Scaffolding's claim is contingent on the finality of a judgment, it is not yet liquidated or demandable and cannot be the basis for a claim of compensation.
The seizure of the commissions was effective as of the date of service of the garnishment petition and interrogatories. La.Code Civ.P. art. 2411. At that time, Scaffolding's claim was not yet liquidated or demandable. Scaffolding had no claim against Consolidated at the time the commissions were retained. As such, no compensation could result, as there was no simultaneous existence of two equally demandable debts as required by Civil Code article 2208. Since no compensation or setoff could occur, we find no merit in this assignment of error.
Therefore, for the above and foregoing reasons the judgment of the trial court is affirmed at defendant-appellant's costs.
AFFIRMED.
NOTES
[*] Judge John S. Covington of the 19th Judicial District Court has been duly elected to this court; that term begins on January 1, 1985. In the interim, the Supreme Court has appointed him to this court pro tempore.
[1] La.C.C. art. 1810 was amended in 1983. The pertinent part of the article, paragraph B, was deleted from Article 1810 and moved to Article 1672, which governs involuntary dismissals.
[2] The concept of compensation or set-off is treated by La.Civ.Code arts. 2207-09, which provide as follows:

Art. 2207. When two persons are indebted to each other, there takes place between them a compensation that extinguishes both the debts, in the manner and cases hereafter expressed.
Art. 2208. Compensation takes place of course by the mere operation of law, even unknown to the debtors; the two debts are reciprocally extinguished, as soon as they exist simultaneously, to the amount of their respective sums.
Art. 2209. Compensation takes place only between two debts having equally for their object a sum of money, or a certain quantity of consumable things of one and the same kind, and which are equally liquidated and demandable.
The days of grace are no obstacle to the compensation.