**VAUGHN FLYING SERVICE, INC.**

v.

**Paul COSTANZA, et al.**

**Civ. A. No. 83–2685.**

United States District Court,
W.D. Louisiana,
Lafayette-Opelousas Division.

Aug. 3, 1984.

R.H. Luke, Boatner & Luke, Bunkie, La., for plaintiff.

Leven H. Harris, Asst. U.S. Atty., Shreveport, La., for intervenor.

## RULING

SHAW, District Judge.

This matter comes before the Court on the motion of the intervenor, the United States of America, to dismiss the plaintiff's petition for garnishment. Vaughn Flying Service, Inc. filed the petition in state court to enforce a judgment obtained earlier against Paul Costanza. The garnishment

is directed to approximately $8,000 on deposit for the benefit of Costanza in a supervised Farmer's Home Administration (FHA) account in the American Bank & Trust Company in Opelousas. The United States intervened on the behalf of the FHA, claiming a superior interest in the deposited funds, and then removed the garnishment action to this Court.

██ In an earlier ruling, the Court followed *United States v. Kimbell Foods*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), and held that the Louisiana law of security devices would serve as surrogate federal law in this case. The basic issue now before the Court is whether the United States' alleged security interest primes Vaughn's garnishment claim under Louisiana law. The United States claims that it holds the account in pledge by virtue of a deposit agreement.[1] The holder of a pledge on a bank account will prevail against a subsequent garnishing judgment creditor if the pledge is in fact valid as against third parties. *Montaldo Insurance Agency, Inc. v. Culotta*, 153 So.2d 899 (4th Cir.1963). Vaughn does not contest the validity of the pledge as between the United States and Costanza,[2] so the issue can be narrowed to the question of whether the pledge is valid against third parties.

Vaughn contends that the United States does not have a valid pledge as against third parties because the deposit agreement does not state the amount of the debt secured. It cannot be disputed that the pledge agreement must state the amount of the debt secured when a written act of pledge is required. La.Civ.Code art. 3158. Yet it is far from clear that a written act of pledge is required in order for a pledge of a bank account to have effect against third parties. Louisiana case law provides only scant guidance in this regard.

The *Montaldo* court seemed to assume that a written act of pledge stating the amount of the debt was necessary. This particular issue was not presented to the court, however. Moreover, the court found that the requirement was satisfied in that case because the *note* in question, which would of course state the amount of the debt, itself contained a pledge of the bank account. All conditions of the note were incorporated into the continuing guarantee that was to be enforced in *Montaldo*. 153 So.2d at 901. The loan documents submitted by the Government in the instant case do not contain the language of pledge found in *Montaldo* and, as Vaughn points out, the particular agreements submitted are dated *after* the plaintiff's garnishment claim. The Court must therefore resolve the question of whether a written act of pledge stating the amount of the debt secured is required in order for a pledge of a bank account to have effect against third persons.

The pledge of a bank account involves the pledge of a credit or incorporeal right

---

1. The agreement is reproduced as an appendix to this opinion.

2. The essential requirement of delivery of the thing pledged has been clearly satisfied in the instant case. Delivery may be accomplished by vesting possession in a third person agreed on by the parties. La.Civ.Code art. 3162. For delivery to a third person to be effective however, the pledgor must completely dispossess himself of his right to possession of the thing pledged. That is, the third party must be contractually bound to the creditor to hold the property for the creditor, and, in particular, not to relinquish possession of the pledge to the pledgor. *E.g., Succession of Lanaux*, 46 La.Ann. 1036, 15 So. 708 (1894).

The deposit agreement in the instant case is a tripartite agreement between the United States as pledgee-creditor, Paul Costanza as pledgor-debtor and American Bank as third party possessor. A reading of Paragraph 2 of that agreement, reproduced in the appendix indicates that Costanza has completely dispossessed himself of his right to possession of the account by virtue of the fact that he cannot withdraw funds without the consent of the pledgee, the United States. Moreover, American Bank, as third party possessor, is contractually bound by the agreement to relinquish possession of the funds in the account only on the pledgee's order and is further obligated to turn the funds over to the pledgee on its demand. Thus, delivery has been accomplished and the pledge is therefore valid at least as between Paul Costanza and the United States.

that is not evidenced by a written instrument. The pledge of such a credit is specifically authorized by Louisiana Revised Statute 9:4321.[3] Section 4322 of the Civil Code ancillaries provides that such a pledge "shall be valid as to all persons without delivery." La.R.S. 9:4322. Section 4323 further provides that written notice of the pledge must be given to the obligor or a written acknowledgment must be received from him.[4] La.R.S. 9:4323. On their own terms, the three sections seem to require only written notice to, or a written acknowledgment from, the obligor in order to perfect the pledge as to all persons. Section 4321 can be read as incorporating additional requirements, however, because of the legislative declaration that a credit "may be pledged in the same manner as other property." The propriety of such a reading must be judged after an examination of the statutory predecessor to section 4321 and the jurisprudence prior to that statute.

Sections 4321, 4322 and 4323 are derived from Act 95 of 1938. Prior to the 1938 act, a credit not evidenced by a written muniment of title could be pledged only by way of an additional agreement in the form of a sale or transfer. *See* Hebert & Lazarus, *The Louisiana Legislation of 1938*, 1 La.L. Rev. 80, 108-09 (1938). Absent such an additional agreement transferring the credit, the courts reasoned that the incorporeal rights were insusceptible of delivery. *Id.* There was simply nothing tangible to transfer, either actually or symbolically. Act 95 was passed to eliminate the jurisprudential requirement of an additional act of transfer to accomplish delivery of incorporeal rights not evidence by a written title. Hebert & Lazarus, *supra*, at 109. The Act provides:

That claims, credits, obligations and incorporeal rights in general not evidenced by written instrument or muniment of title, shall be subject to pledge, and may be pledged in the same manner as other property under the law of the State, provided that the same shall be valid as to all persons without delivery of such claim, credit, obligation or incorporeal right of any kind, except that to obligate the obligor thereof to pay the amount due thereunder to the pledgee, notice of the pledge must be given in writing to the obligor or must be acknowledged in writing by the obligor.

Acts 1938, No. 95.

Dean Hebert and Professor Lazarus recognized that the intended meaning of the phrase "may be pledged in the same manner as other property" is "not entirely clear." Hebert & Lazarus, *supra*, at 109. The two suggested, however, that the phrase directed the courts to look to the requirements for the pledge of corporeal property, and thereby incorporated the requirement that there be a written act of pledge before the pledge can be operative against third parties. *Id.* at 109-10. This analysis is certainly plausible, but this Court must respectfully disagree with the conclusion suggested by these two eminent civilian scholars.

The Court reads the phrase in question not as a directive to incorporate other statutory rules, but merely as a declaration that, contrary to the prior jurisprudence, incorporeal rights not evidenced by written title can indeed be pledged and that this can be done "in the same manner," *i.e.* without the necessity of an additional act of transfer, as other property. That is, the language emphasizes the preceding statement that such rights "shall be subject to

---

3. "Claims, credits, obligations, and incorporeal rights in general not evidenced by written instrument or muniment of title, shall be subject to pledge, and may be pledged in the same manner as other property."

4. As will be seen more clearly shortly, Section 4322 abolishes only the requirement of a fictitious or symbolical delivery. Delivery in the sense discussed above in footnote 2 is still re-

quired, and same is accomplished by compliance with Section 4323. This link between a requirement of delivery and notice to the obligor is quite apparent in the original Act. In Act No. 95 of 1938, delivery was not required *"except that* to obligate the obligor ... to pay the amount due ... to the pledgee,"* notice must be given to the obligor of the pledge. Acts 1938, No. 95 (emphasis added).

pledge," and goes on to indicate that the manner of pledge, the type of agreement required, will not differ from the manner in which other property is pledged. The sole purpose of the phrase is to accentuate the break from the prior jurisprudential rule that some agreement in addition to the pledge is required. The substantive provisions that actually govern the validity of the newly-authorized pledge follow immediately after the declaration that the pledge may be made in the same manner as pledges of other property.

Moreover, the Act does not require a written act of pledge even if the phrase in question is viewed as a directive to refer to other statutes. The phrase is couched in permissive terms; the Act provides that these incorporeal rights *"may* be pledged in the same manner as other property." Acts 1938, No. 95 (emphasis added). The provision that follows the phrase states when the pledge *"shall be* valid." This provision requires only written evidence that the obligor has been notified. Thus, parties may, if they desire, sign a written act of pledge stating the amount of the debt secured when they pledge an incorporeal right not evidenced by written title.[5] But the pledge would be valid without the written act so long as written notice of the pledge is given to, or a written acknowledgment is received from, the obligor.

 Two closely related observations support this reading of the statute. First, the statute was adopted to remove, rather than to expand, prior restrictions on the pledge of these incorporeal rights. The Court's reading follows the spirit of the Act by not imposing an additional requirement which is not contained within the Act itself and which was not present prior to its enactment. Second, construing the phrase as a directive to incorporate the requirement of a written act of pledge would necessitate a holding that the 1938 Louisiana Legislature repealed Act 157 of 1900

by implication to the extent that it applied to incorporeal obligations not evidenced by written title. Act 157 of 1900 amended Civil Code articles 3158 and 3160 to remove the requirement of a written act for the pledge of incorporeal rights. *See* Hebert & Lazarus, *supra,* at 107 & n. 131. As a matter of statutory construction, repeals by implication are not favored and apparently contradictory statutes should be read when possible so as to give full effect to each statute. *Gulf Oil Corp. v. State Mineral Board,* 317 So.2d 576, 587 (La.1975); *Bethard v. State ex rel Board of Trustees of Louisiana State Employees Retirement System,* 430 So.2d 1122, 1124 (La,App. 1st Cir.), *writ denied,* 435 So.2d 430 (La.1983); *Johnston v. Morehouse Parish Police Jury,* 424 So.2d 1053, 1056–57 (La.App. 2d Cir.1982), *writ denied,* 427 So.2d 1208 (La. 1983). Here, the Court finds its reading of the Act to be preferable to a construction of this language which would both add an additional requirement for an effective pledge and repeal a portion of an earlier statute. That the legislature intended to accomplish these results by such ambiguous indirection is unlikely. The Court therefore holds that a pledge of an incorporeal right not evidenced by written title, such as the credit in the bank account involved here, is valid and effective against third parties without a written act of pledge stating the amount of the debt secured.

 The Court adopts this holding fully aware of the recent amendment to Louisiana Civil Code article 3156. Prior to its 1981 amendment, Article 3156 provided:

> When a debtor wishes to pawn a claim on another person, he must make a transfer of it in the act of pledge, and deliver to the creditor to whom it is transferred the note or instrument which proves its existence, if it be under private signature, and must endorse it if it be negotiable.

---

**5.** This would of course be the wisest procedure to follow until the issue is definitively resolved by the Louisiana Supreme Court or by a clarifying legislative enactment. The opinion of a

federal district court acting as a surrogate civilian court gives scant security to a pledgee-creditor seeking to protect his claim against third parties.

La.Civ.Code art. 3156. The article's reference to "the act of pledge" implies that a written act of pledge is required to pledge a credit or other claim on another and some nineteenth-century decisions so held. *See* Hebert & Lazarus, *supra*, at 107 n. 131. This implication was repealed by Act 157 of 1900, referred to above. *Id.* Yet the critical language in Article 3156 was never changed, and it has further survived the 1981 amendment to the article. *See* 1981 La.Acts No. 315, § 1. The Court does not find the 1981 legislative action to be a repeal by implication of Act 157 of 1900, however. The sole purpose of the amendment in 1981 was to delete the requirement that a negotiable instrument be endorsed prior to its being pledged. See Rubin, *Developments in the Law, 1980–1981—Security Devices*, 42 La.L.Rev. 413, 416 (1982). There is no indication that the Louisiana Legislature was otherwise concerned with the formal requisites for the pledge of a claim on another when it amended Article 3156.

The provisions of Civil Code article 3158 that pertain to collateral mortgages also do not control here.[6] These provisions require, *inter alia*, that a total amount must be stated when certain instruments are pledged to secure future advances. By its own terms, the requirement applies only to "any instrument or item of the kind listed in [the] Article." La.Civ.Code art. 3158. Thus, the requirement applies only to "promissory notes, bills of exchange, bills of lading, stocks, bonds, policies of life insurance, or written obligations of any kind." *Id.* Incorporeal rights not evidenced by written title, in general, and bank accounts, in particular, are not listed in the Article. They can therefore be pledged to secure future advances without stating a total limit to be secured by the pledge, for, unless otherwise restricted, "[e]very lawful obligation may be [secured] by the auxiliary obligation of pledge." La. Civ.Code art. 3136. *See also* La.Civ.Code art. 1887 ("Future things may be the object of an obligation.")

Accordingly, the motion of the intervenor, the United States of America, to dismiss the petition for garnishment by the plaintiff, Vaughn Flying Service, Inc., is GRANTED.

## APPENDIX

(Rev. 10-8-74)

FARMERS HOME ADMINISTRATION

DEPOSIT AGREEMENT

| NAME(S) OF DEPOSITOR(S) | SOCIAL SECURITY OR IRS TAX NO. |
|---|---|
| PAUL L. COSTANZO or JANVA F. COSTANZO- (SUBJECT TO FmHA COUNTER-SIGNATURE) | 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 |

| ADDRESS (Including ZIP CODE): c. o FARMERS HOME ADMINISTRATION P.O. BOX 751 OPELOUSAS, LA., 70570 | NAME AND ADDRESS OF BANK (Including ZIP CODE) AMERICAN BANK & TRUST CO. OPELOUSAS, LA., 70570 |
|---|---|

| COUNTY OF RESIDENCE ST. LANDRY | DATE OF AGREEMENT 9/11/79 | BANK ACCOUNT NUMBER (If used) C-2 7C 9 7.C |
|---|---|---|

6. Article 3158 provides in pertinent part:

[I]t is further provided that whenever a pledge of any instrument or item of the kind listed in this article is made to secure a particular loan or debt, or to secure advances to be made up to a certain amount, and, if so desired or provided, to secure any other obligations or liabilities of the pledger to the pledgee, then existing or thereafter arising, up to the limit of the pledge, and the pledged instrument or item remains and has remained in the hands of the pledgee, the instrument or item may remain in pledge to the pledgee to secure at any time any renewal or renewals of the original loan or any part thereof or any new or additional loans, even though the original loan has been reduced or paid, up to the total limit which it was agreed should be secured by the pledge, and, if so desired or provided, to secure any other obligations or liabilities of the pledger to the pledgee, then existing or thereafter arising, up to the limit of the pledge, without any added notification or other formality, and the pledge shall be valid as well against third persons as against the pledger thereof, if made in good faith; and such renewals, additional loans and advances or other obligations or liabilities shall be secured by the collateral to the same extent as if they came into existence when the instrument or item was originally pledged and the pledge was made to secure them;

La.Civ.Code art. 3158.

THIS AGREEMENT, made on the date indicated above, between the United States of America, acting through the Farmers Home Administration, herein called the "Government," the above-named Depositor(s), herein called the "Depositor," and the above named Bank, herein called the "Bank."

WITNESSETH:

In consideration of loans or other advance(s) of funds made or insured by the Government and the depositing in the Bank, to the credit of the Depositor in the account established pursuant to this agreement, of moneys derived from such loans or other advance(s) of funds, or moneys otherwise obtained by the Depositor, it is agreed as follows:

1. The Depositor hereby assigns, transfers, and pledges to the Government the aforesaid account and deposit(s), heretofore or hereafter made, and conveys to the Government a security interest in all money deposited in said account, as security for the repayment of any and all indebtedness now or hereafter owing by the Depositor to or insured by the Government, and for the performance of the obligations and agreements of the Depositor in connection with such advance(s) or indebtedness.

2. No part of such deposit(s), account or money shall be withdrawn by the Depositor and no withdrawal shall be permitted by the Bank except on the order of the Depositor and the counter-signature of a duly authorized representative of the Government: Provided, however, that at any time upon written demand or order by the State Director of the Farmers Home Administration the Bank shall pay over the balance then on hand, or any part thereof demanded, for application on said indebtedness or as a return of grant funds to the Government or for protection of the Government's lien or security or to accomplish the purpose for which such advances were made: Provided, further, that the death, disability, or insolvency of the Depositor shall not impair the power of the State Director to demand or order such withdrawal.

3. The Bank agrees that it will not assert any right of offset, except service charges, with respect to the funds deposited pursuant to this agreement by reason of any indebtedness or claim now or hereafter owing to or acquired by it.

4. The Bank shall be under no obligation with respect to the expenditure of funds after their withdrawal from the Bank in accordance with the provisions of this agreement. Upon making payment pursuant to an order or check duly executed by the Depositor and the countersigning officer, or pursuant to the written demand or order of the said State Director, the Bank shall be discharged from all obligations with respect to the funds so released.

5. The Bank further agrees that, at the end of each ............... monthly ............... period, it will forward statements and cancelled checks to the Farmers Home Administration office at the address shown above for review by that Agency.

IN WITNESS WHEREOF, the parties hereto have executed this agreement as of the day and year first above written.

BANK ___AMERICAN BANK & TRUST CO.___

BY _____
 (Title)

DEPOSITOR _____
 PAUL L. COSTANZO

DEPOSITOR _____
 JANVA F. COSTANZO

NOTE TO BANK: *Please return signed original and copy of this form, along with copy of deposit slip to the above FmHA Office address.*

☆ U.S. Government Printing Office: 1978—465-011. 3338 Region No. 6

UNITED STATES OF AMERICA,

BY _Bertha O. Aymond_
 BERTHA O. AYMOND
 COUNTY OFFICE CLERK
 (Title)

Filed ___Oct. 28___ 19 63
FARMERS HOME ADMINISTRATION
UNITED STATES DEPARTMENT OF AGRICULTURE

_Shirley Graffia_
Dy. Clerk

A True Copy

FmHA 402-1 (Rev. 10-8-74)

Position _Jennifer Thibodeaux_
 Dy. Clerk