503 So.2d 1061 (1987)
BANK OF COUSHATTA, Plaintiff-Appellant,
v.
Euna PATRICK, Defendant-Appellant.
Euna Dare ARMISTEAD, Plaintiff-Appellee,
v.
BANK OF COUSHATTA, Defendant-Appellant.
Nos. 18434-CA, 18435-CA.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1987.
Rehearing Denied March 25, 1987.
Writ Denied May 29, 1987.
*1062 Bethard & Davis by James G. Bethard, Coushatta, for Bank of Coushatta.
William R. Jones, Coushatta, for Euna Patrick.
Before HALL, C.J., and JASPER E. JONES and FRED W. JONES, Jr., JJ.
JASPER E. JONES, Judge.
In these consolidated actions, the Bank of Coushatta (Bank), seeks to recover part of the balance due on a promissory note *1063 made by Walter C. Lee allegedly secured by a Collateral Pledge Agreement and two continuing guaranties, all of which were executed by Euna Armistead Patrick. Ms. Patrick seeks to recover $35,000.00 which the bank withdrew from her account, allegedly pursuant to the Collateral Pledge Agreement, damages for mental anguish and attorney's fees.

The Facts
The bank instituted suit No. 26,491 against Ms. Patrick for the sum of $9,190.73 which is the total of two continuing guaranties signed by her on behalf of Walter Lee. The bank contends Walter Lee's obligation to the bank exceeded the amount demanded from Ms. Patrick based upon the balance due on a note held by it, made by Walter C. Lee, dated July 9, 1984, in the amount of $42,955.03 after crediting against it Ms. Patrick's N.O.W. checking account in the amount of $35,000.00 which it had acquired pursuant to its interpretation of the terms of the Collateral Pledge Agreement. The bank president testified a N.O.W. checking account is an interest bearing checking account. Ms. Patrick instituted suit No. 26,492 against the bank seeking return of the funds in the checking account. She alleged the seizure of her bank account was based upon fraud and sought damages and attorney's fees. The suits were consolidated for trial and judgment was rendered in suit No. 26,491 in favor of the bank and against Ms. Patrick for $5,521.37. In suit No. 26,492 the trial court rendered judgment in favor of Ms. Patrick and against the bank for $35,000.00. The bank and Ms. Patrick appealed in case No. 26,491. The bank appealed in case No. 26,492 and Ms. Patrick answered the appeal. In suit No. 26,491 we amend to award the bank $9,190.73 and affirm. In suit No. 26,492 we affirm.
On May 31, 1972, Ms. Patrick purchased three motel units constructed on trailers with money borrowed from the bank. The debt was secured by three chattel mortgages and notes dated May 30, 1972, on the motel units in principal amounts of $15,000.00, $10,000.00 and $10,000.00 respectively. The hand installment note signed by Ms. Patrick in the amount of $31,114.09 dated May 31, 1972, was produced at trial by the bank. This note reflected on the face of it that it was secured by "collateral pledged on Patriot Motel Units." The bank president testified this note was paid but he did not say when. However, the note reflects the last installment was due on April 15, 1979. The bank, in answer to interrogatories and by the testimony at trial by its president, denied it had possession of the three chattel mortgage notes signed by Ms. Patrick which were secured by the motel units. The bank did not disclose the circumstances by which it had terminated its possession of these chattel mortgage notes. In 1977, Ms. Patrick's daughter, Sandy, married Walter C. Lee. Sandy and Walter entered into a prenuptial agreement in order to remain separate in property. In 1978, Ms. Patrick sold the three motel units to Walter, but the titles were never transferred to him.
On February 26, 1979, Walter borrowed $4,000.00 from the bank and executed a promissory note showing it was secured by a Collateral Pledge Agreement up to $35,000.00. This Collateral Pledge Agreement was executed by Ms. Patrick on February 28, 1979, and the pledgor is shown as "Euna Dare Armistead for Walter C. Lee." The three May, 1972, chattel mortgages and notes on the motel units executed by Ms. Patrick were listed and described in the Collateral Pledge Agreement on the part of the agreement entitled "Description of Collateral." Within one year from the date the Collateral Pledge Agreement was signed, Walter had borrowed from the bank over $26,000.00, represented by several promissory notes, all of which were secured by the Collateral Pledge Agreement.
The president of the bank, Mr. Tisdale, testified Walter continued to borrow money and executed over thirty promissory notes, most of which were executed to rework the debts incurred within one year from the date the Collateral Pledge Agreement was signed. The balances of the numerous notes were eventually combined into one note dated July 9, 1984, in the amount of $42,955.03 due October 7, 1984.
*1064 Sandy Lee also borrowed money from the bank during this time period. On September 1, 1983, Sandy borrowed $3,146.78 from the bank. On the same date, Ms. Patrick executed a continuing guaranty up to $3,669.36 to secure extending credit to Sandy and Walter Lee. Ms. Patrick had previously executed on December 1, 1981, a continuing guaranty up to $5,521.37 for Walter.
In October, 1984, Walter petitioned for bankruptcy and the bank filed a proof of claim. On December 20, 1984, the bank, pursuant to the provisions of the Collateral Pledge Agreement, removed $35,000.00 from Ms. Patrick's N.O.W. checking account and applied it to Walter's debt. The bank then filed suit against Ms. Patrick on April 30, 1985, to recover the total amount of the two continuing guaranties on the basis that more than this amount was owed as the balance of Walter Lee's note in the amount of $42,955.03. Ms. Patrick sued the bank seeking to recover the $35,000.00 plus damages for mental anguish and attorney's fees.
The trial court, in written reasons, found the continuing guaranties were executed simultaneously with specific debts, a loan to Sandy for $3,669.36 and one to Walter for $5,521.37. The trial court further found the note in the amount of $3,669.36 had been paid and Ms. Patrick's obligation under the continuing guaranty executed in connection with this note was, therefore, extinguished. The trial court found the note executed by Walter in the amount of $5,521.37 had been reworked and the sum owed on this note was included in the note in the amount of $42,955.03 on which the bank filed suit. The trial court found the $5,521.37 continuing guaranty executed by Ms. Patrick remained in full effect up to $5,521.37, but the bank had no authority under the continuing guaranty or the Collateral Pledge Agreement to withdraw funds from Ms. Patrick's N.O.W. account to help satisfy Walter's debt. The trial court rendered judgment in suit No. 26,491 in favor of the bank and against Ms. Patrick for $5,521.37. The trial court further rendered judgment in suit No. 26,492 in Ms. Patrick's favor and against the bank for $35,000.00 and cast the bank for all costs.
These appeals raise the following issues for decision:
(1) Did the trial court err in concluding the bank had no authority, under the Collateral Pledge Agreement, to debit Ms. Patrick's checking account to help satisfy Walter's debt?
(2) Did the trial court err in concluding Ms. Patrick's obligation under the continuing guaranty up to $3,669.36 was extinguished when a note it secured was paid? and
(3) Did the trial court err in finding the bank had not committed fraud and in failing to award Ms. Patrick damages and attorney's fees?

Issue No. 1The Collateral Pledge Agreement
The bank contends the trial court erred in finding ambiguity in the Collateral Pledge Agreement and concluding it had no authority, under this agreement, to debit Ms. Patrick's checking account, without demand, to apply upon the debt incurred by Walter. The bank argues Ms. Patrick, under the Collateral Pledge Agreement, pledged any money she had on deposit with the bank as security for the debts of Walter. The bank contends all of the notes executed by Walter were secured by the agreement.
Ms. Patrick contends the checking account was not pledged because only the chattel mortgage notes were described in the Collateral Pledge Agreement. Ms. Patrick's argument relies upon the first paragraph of the Collateral Pledge Agreement which states "the security listed on the back of the document is pledged." Ms. Patrick points out the only items listed on the back of the agreement are the chattel mortgages and chattel mortgage notes secured by the motel units. Ms. Patrick further points out the bank did not have possession of these chattel mortgage notes and, therefore, she contends the bank had no pledge of any of her property when the bank debited her checking account in the *1065 amount of $35,000.00 on December 20, 1984.[1] Ms. Patrick argues that her checking account was not pledged because the account was not described with the chattel mortgages and notes in the agreement and that no passbook, certificate of deposit or other security instrument was delivered to the bank as pledgee.

Applicable Law
The pledge of a bank account involves the pledge of a credit or incorporeal right not evidenced by a written instrument and is governed by LSA-R.S. 9:4321-4324. Vaughn Flying Service v. Costanza, 590 F.Supp. 1077 (1984); Succession of Villere, 411 So.2d 484 (La.App. 4th Cir.1982); Naquin v. American Bank of Luling, 347 So.2d 332 (La.App. 4th Cir.1977). To perfect a valid pledge of an incorporeal not evidenced by a written instrument either an oral or written act of pledge is required along with written notice of the pledge to the obligor or written acknowledgement by the obligor. LSA-R.S. 9:4321 and 4323;[2]Citizens Bank and Trust v. Consolidated Terminal Warehouse, Inc., 460 So.2d 663 (La.App. 1st Cir.1984); Vaughn Flying Service, Inc. v. Costanza, supra.
Because pledge is a contract a "meeting of the minds" is required that the thing pledged stands as security for a debt. LSA-C.C. art. 3133;[3]People's Bank & Trust Co. v. Campbell, 374 So.2d 741 (La. App. 3d Cir.1979), writ den., 376 So.2d 1268 (La.1979).
LSA-C.C. art. 3152 provides:
"It is essential to the contract of pledge that the creditor be put in possession of the thing given to him in pledge, and consequently that actual delivery of it be made to him, unless he has possession of it already by some other right."
The only formality required for the pledge of a negotiable note is delivery. American Bank & Trust Co. v. Straughn, 248 So.2d 73 (La.App. 1st Cir.1971), writ den., 259 La. 746, 252 So.2d 450 (1971); Mardis v. Hollanger, 426 So.2d 392 (La. App. 2d Cir.1983), writ den., 430 So.2d 93 (La.1983). However, for there to be a pledge the formality of delivery must be coupled with an agreement that the note stands as security for existing or future debts. People's Bank & Trust Co. v. Campbell, supra; Mardis v. Hollanger, supra.
The pledgee has authority to dispose of or declare himself to be the owner of the object in pledge with the express agreement of the pledgor. Steiner v. Zammit, 279 So.2d 728 (La.App. 1st Cir. 1973); First Metropolitan Bank v. Plaia, 384 So.2d 560 (La.App. 4th Cir.1980), writ gr., 386 So.2d 94 (La.1980), on remand 389 So.2d 870 (La.App. 4th Cir.1980).
The trial judge is in a better position to evaluate the credibility of witnesses and the weight of evidence than an appellate court who does not see or hear the witnesses. For this reason, a reviewing court should adopt the trial court's findings as its own in the absence of clear error, even if other conclusions from the same evidence are equally reasonable. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Perkins v. Certa, 469 So.2d 359 (La.App. 2d Cir. 1985).
Generally, where the words to a contract are clear, explicit and lead to no absurd consequences, the meaning and intent of the parties must be sought within the four *1066 corners of the instrument and cannot be explained or contradicted by parol evidence. LSA-C.C. arts. 1848 and 2046;[4]Texaco, Inc. v. Newton & Rosa Smith Charitable Trust, 471 So.2d 877 (La.App. 2d Cir.1985), writ den., 475 So.2d 1104 (La.1985); Quintana Petroleum Corp. v. Alpha Investments Corp., 435 So.2d 1092 (La.App. 1st Cir.1983). However, parol evidence is admissible when there are allegations of fraud, error or mistake, to show the terms of the instrument are not the true intentions of the parties. Mitchell v. Clark, 448 So.2d 681 (La.1984); Daigle & Associates, Inc. v. Coleman, 396 So.2d 1270 (La.1981).
In the instant case, Ms. Patrick testified she did not intend to guarantee the debts of Walter Lee or pledge her personal funds to the bank. She further testified she signed the Collateral Pledge Agreement because title to the motel units was in her name.
The trial judge sustained the bank's objection to the use of parol evidence to show the terms of the Collateral Pledge Agreement did not express the true intent of the parties.
Where the words to a contract are clear, explicit and lead to no absurd consequences, it is presumed that one who signs the contract knows its contents. Such a person cannot avoid the obligations of the contract by contending that he did not read it, or that it was not explained, or that he did not understand it. Mitchell v. Bertolla, 397 So.2d 56 (La.App. 2d Cir.1981), writ den., 400 So.2d 669 (La.1981); McClelland v. Security Indus. Ins. Co., 426 So.2d 665 (La.App. 1st Cir.1982), writ den., 430 So.2d 94 (La.1983).
We conclude the words of the Collateral Pledge Agreement are clear, explicit and lead to no absurd consequences. Ms. Patrick did not plead fraud, error, or mistake with respect to the Collateral Pledge Agreement and parol evidence was, therefore, inadmissible to alter the terms of this instrument. Mitchell v. Clark, supra.
Though we conclude the Collateral Pledge Agreement could not be altered by parol evidence, we find that the document, when construed based upon the facts established in this record, did not give the bank a pledge upon Ms. Patrick's checking account nor authorize the bank to apply the funds to the debt of Walter Lee.
A review of the Collateral Pledge establishes that the terms of the agreement do not create any personal liability upon Ms. Patrick to pay the debt of Walter Lee beyond her obligations contained in the documents which are described as pledged within the pledge agreement for the purpose of securing Walter Lee's debts. The Collateral Pledge does, however, provide in the third paragraph that if certain conditions occur the bank has the option of declaring Ms. Patrick's bank accounts to be subject to a pledge for the payment of Walter Lee's debts.[5] If the bank has this option and exercises it, then the bank is specifically authorized to take the funds of Ms. Patrick and apply them to pay Walter Lee's debt. By the terms of the pledge agreement the bank may pursue Ms. Patrick's bank account only if "any liability secured by this agreement becomes due."
*1067 The agreement is entitled "Collateral Pledge Agreement" and provides "that the security listed on the back of the document is pledged by the undersigned to be held by the bank to secure any and all debts due by the undersigned to the bank." On the back page of the pledge agreement it provides "and the following securities have been pledged this date to give effect thereto" and then follows the words "description of collateral" following which the securities are described which consist only of Ms. Patrick's three chattel mortgage notes dated May 30, 1972, one in the amount of $15,000 and two in the amount of $10,000, each being secured by a chattel mortgage on a Patriot Motel Unit. The bank, in answer to Ms. Patrick's suit, asserted it took her checking account pursuant to the Collateral Pledge Agreement but denied in answer to interrogatories filed with this suit that it has possession of the three chattel mortgage notes which are the only listed security in the Collateral Pledge Agreement. The bank only had an option by the terms of the pledge agreement to declare it had a pledge on Ms. Patrick's checking account if Walter Lee's debt was past due and "secured by this agreement" and since the bank had no security in possession within the terms of the agreement, the conditions required before applying Ms. Patrick's bank account to Walter Lee's debts did not exist.
There could be no viability in the Collateral Pledge Agreement without the bank having possession of the notes of Ms. Patrick which were the only securities described in the pledge. Ms. Patrick's checking account was not encumbered by the Collateral Pledge Agreement. This account could not become subject to Walter Lee's debt unless the bank could exercise the option to appropriate it pursuant to the agreement. The bank could only exercise this option if Walter Lee's note, which became due October 7, 1974, was secured by the Collateral Pledge Agreement.
The bank admitted it took Ms. Patrick's checking account but failed to establish it had any right to it under the Collateral Pledge Agreement or other authority and for that reason the trial court was correct in awarding her judgment for the amount of her money taken by the bank.
The trial court found the bank was guilty of no fraud and for this reason denied Ms. Patrick attorney's fees and damages. We find no manifest error in this factual determination.

Issue No. 2The Continuing Guaranty
The bank contends the trial court erred in concluding the continuing guaranty executed in connection with Sandy A. Lee's note in the amount of $3,669.36 terminated when the note was paid. The bank argues both continuing guaranties state they cover present and future debts and continue to remain in full force until terminated by joint written notice.[6] The bank contends it received no notice of termination and the continuing guaranty up to $3,669.36 secured debts in addition to the Sandy A. Lee note Ms. Patrick paid. The continuing guaranty dated September 1, 1983, up to $3,669.36 contains the names of Sandy and Walter Lee. Ms. Patrick contends that on the same day this agreement was executed, Sandy borrowed $3,669.36 which was subsequently paid back by Ms. Patrick. Ms. Patrick argues this payment extinguished her obligations under the continuing guaranty. Ms. Patrick further argues Walter knew nothing about this loan and his name was added to the continuing guaranty by the bank without Ms. Patrick's consent. Therefore, Ms. Patrick contends the bank committed fraud and parol evidence was admissible to ascertain the true intent of the parties.
The trial judge sustained the bank's objection to the use of parol evidence to show the continuing guaranty up to $3,669.36 did not express the true intent of the parties.
*1068 The trial judge also admitted this testimony under an offer of proof.

Applicable Law
A contract of guaranty is equivalent to a contract of suretyship and the two terms may be used interchangeably. Boyle v. Fringe Facts, Inc., 414 So.2d 1333 (La.App. 2d Cir.1982); McKesson Chemical Co. v. Tideland Chemical Co., 471 So.2d 812 (La.App. 3d Cir.1985).
A continuing guaranty remains in force until revoked by the guarantor, expressly or impliedly, or its effectiveness is extinguished in some other mode recognized by law. Magnolia Petroleum Co. v. Harley, 13 So.2d 84 (La.App. 2d Cir.1943); Bonura v. Christiana Bros. Poultry Co. of Gretna, 336 So.2d 881 (La.App. 4th Cir. 1976), writ den., 339 So.2d 11 and 399 So.2d 26 (La.1976).
Fraud is a misrepresentation or suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence. LSA-C.C. arts. 1953 and 1957.[7]Ordner v. Fire Ins. Co. of Quaker City, 467 So.2d 619 (La.App. 3d Cir.1985). The party alleging fraud has the burden of proving it. Mitchell v. Bertolla, supra.
Ms. Patrick alleged fraud in her answer and parol evidence was admissible to show the terms of the continuing guaranty did not express the true intent of the parties. Mitchell v. Clark, supra. However, even considering this parol evidence, we conclude Ms. Patrick failed to prove the bank committed fraud by adding Walter's name to the continuing guaranty up to $3,669.36. This contention is contrary to Ms. Patrick's established pattern of assisting Walter obtain credit which is reflected by the fact that she executed on Walter's behalf the $35,000.00 Collateral Pledge and another continuing guaranty in the amount of $5,521.37. The only evidence of fraud consists of the self-serving testimony of Ms. Patrick, Sandy and Walter. The trial judge concluded there was no fraud and he was able to see and hear the witnesses and we cannot say his finding of no fraud on the bank's part is clearly wrong.
The continuing guaranty up to $3,669.36 provides that it covers present and future debts and is to remain in effect until terminated by written notice. The parol evidence elicited from Mr. Tisdale while on cross-examination by Ms. Patrick is support for the written continuing guaranty and shows it was the bank's intent for this continuing guaranty to cover future debts of Walter or Sandy and not just the note executed simultaneously with the continuing guaranty. At the time Ms. Patrick paid Sandy's note, which was executed simultaneously with the continuing guaranty, Walter's debts were still outstanding. The payment by Ms. Patrick of Sandy's obligation on September 24, 1984, did not extinguish Ms. Patrick's obligation under the instrument for Walter's note dated July 9, 1984, in the amount of $42,955.03, which became due October 7, 1984. She still remained liable for the debts of Walter up to $3,669.36 under the continuing guaranty.
For the reasons assigned we find the bank was entitled to a judgment for the total of the two continuing guaranties in the amount of $9,190.73.
Because the bank was entitled to judgment on both guaranties, we cast Ms. Patrick with all costs below in suit No. 26,491. See LSA-C.C.P. arts. 1920 and 2164.
To reflect these changes, the judgment in suit No. 26,491 is amended to recast the second and third paragraphs as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, Bank of Coushatta, *1069 and against the defendant, Euna Patrick, in the full and true sum of $9,190.73, the amount secured by the two continuing guaranties, together with legal interest from judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all costs of these proceedings be assessed against the defendant, Euna Patrick. As amended, the judgment is affirmed at the cost of defendant, Euna Patrick.
For the reasons stated in the body of the opinion, the judgment in suit No. 26,492 in favor of Ms. Patrick and against the bank in the amount of $35,000.00 is affirmed with the cost on appeal being assessed against the Bank of Coushatta.
HALL, Chief Judge, concurring in part and dissenting in part.
I concur with the conclusions of the majority opinion insofar as the liability of Ms. Patrick on the continuing guarantees is concerned.
I respectfully dissent from that part of the majority opinion which holds that the bank was not entitled to apply funds deposited in Ms. Patrick's checking account to the indebtedness owed by Lee up to the sum of $35,000.00 under the terms of the collateral pledge agreement.
The collateral pledge agreement was signed by Euna Dare Armistead (Ms. Patrick) and Walter C. Lee. In contemplation of loans and advances to be made by the bank to the "undersigned" (Ms. Patrick and Lee), and to secure any liability of the undersigned to the bank, the undersigned pledged the securities described in the agreement (the three chattel mortgages and notes) to the bank. The undersigned further agreed that should any liabilities secured by the agreement (which would be any liability of Ms. Patrick or Lee to the bank) become due, any funds deposited to the credit of the undersigned could be immediately applied to such liability.
The precise language of the pertinent provision of the printed form collateral pledge agreement is as follows:
The undersigned further agrees that should any liability secured by this agreement become due or be declared due in accordance with the provisions hereof, any and all funds deposited to his credit in the Bank, or belonging to him and otherwise in the possession of or under the control of the Bank may be immediately applied thereto.
The loans made by the bank to Lee, secured by the collateral pledge agreement, became due and the bank was authorized under the express terms of the agreement to immediately apply funds deposited in Ms. Patrick's checking account at the bank in payment of that liability. It matters not that the purported pledge of the chattel mortgages and notes may not have been valid, effective, or enforceable because the mortgage notes were not delivered to or in the possession of the bank. Ms. Patrick was nevertheless bound by her further agreement, given as additional security for loans made by the bank to her or to Lee, which authorized the bank to apply funds in her bank account to payment of such liability when same became due.
Accordingly, I would amend the judgment in Suit Number 26,491 as set forth in the majority opinion, but I would reverse the judgment in Suit Number 26,492 and render judgment in favor of the bank rejecting Ms. Patrick's demands in that suit.
NOTES
[1] The bank president testified the bank did not have possession of the chattel mortgage notes and he thought they had been paid. He later testified that it was the hand note which the chattel mortgage note secured that had been paid and that he did not know what disposition the bank had made of the chattel mortgage notes.
[2] LSA-R.S. 9:4321 provides:

"Claims, credits, obligations, and incorporeal rights in general not evidenced by written instrument or muniment of title, shall be subject to pledge, and may be pledged in the same manner as other property."
LSA-R.S. 9:4323 provides:
"To bind the obligor to pay the amount due to the pledgee, notice of the pledge shall be given in writing to the obligor or shall be acknowledged in writing by him."
[3] LSA-C.C. art. 3133 provides:

"The pledge is a contract by which one debtor gives something to his creditor as a security for his debt."
[4] LSA-C.C. art. 1848 provides:

"Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified by a subsequent and valid oral agreement."
LSA-C.C. art. 2046 provides:
"When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."
These articles became effective January 1, 1985 and replace former articles 1945 and 2276. The official revision comments under the new articles provide that they do not change the law.
[5] The bank relied on the following language in the Collateral Pledge Agreement in debiting Ms. Patrick's checking account:

"The undersigned further agrees that should any liability secured by this agreement become due or be declared due in accordance with the provisions hereof, any and all funds deposited to his credit in the bank, or belonging to him and otherwise in the possession of or under the control of the bank may be immediately applied thereto." [emphasis added]
[6] The continuing guaranties cover debts "whether now existing or hereafter arising" and applies to "any notes signed or to be signed by said debtor." The term of the obligation is described as follows: "This guaranty shall be a continuing guaranty and shall remain in full force and effect until terminated by written notice to said bank."
[7] LSA-C.C. art. 1953 provides in pertinent part:

"Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other."
LSA-C.C. art. 1957 provides:
"Fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence."