United States Court of Appeals,

Fifth Circuit.

No. 94-40947.

In the Matter of Chris J. ROY, a Law Corporation, Debtor.

COTTONPORT BANK f/k/a Central Louisiana Bank & Trust Co., Appellant,

v.

Chris J. ROY, Sr., et al., Appellees.

July 13, 1995.

Appeal from the United States District Court for the Western District of Louisiana.

Before WISDOM, DUHÉ and BENAVIDES, Circuit Judges.

WISDOM, Circuit Judge.

The plaintiff/appellee, trustee for the bankruptcy estate of the law firm of Chris J. Roy, of Alexandria, Louisiana, filed a petition in the bankruptcy court seeking to establish that an alleged pledge by the law firm to the defendant/appellant, Cottonport Bank, was unperfected and unenforceable against the bankruptcy estate. The bankruptcy court determined that there was not a valid pledge. The district court affirmed. Because we agree that the parties did not perfect a pledge under Louisiana law, we AFFIRM.

I.

In 1989, the law firm of Chris J. Roy filed a voluntary petition for bankruptcy. Wade Kelly was appointed as permanent trustee of the law firm's bankruptcy estate. Kelly filed a complaint in the bankruptcy court seeking to establish that a

1

pre-bankruptcy pledge of a contingency fee to Cottonport Bank, the appellant, was unperfected and unenforceable.

The firm earned the fee for its handling of a case on behalf of its client, Juneau, against American Honda Motor Company. In 1986, Roy executed a document which purported to "pledge and assign" 25 percent of the fee interest in the Juneau case to Cottonport Bank[1] as guaranty for loans made by the bank to the firm or Roy.[2] The transaction was amended in 1988 when Roy executed a second document which purported to "pledge and assign" 100 percent of his interest in the Juneau fee to Cottonport Bank.[3]

---

[1]The appellant bank is also referred to in the briefs of the parties as Central Louisiana Bank & Trust Company or CENLA.

[2]The document executed by Roy and Cottonport Bank, entitled "act of assignment," provided, in pertinent part:

> For and in consideration of the loan to Chris J. Roy (A Law Corporation), Chris J. Roy (A Law Corporation) and Chris J. Roy, individually, pledge and assign to the Central Louisiana Bank & Trust Company [aka Cottonport Bank] an undivided twenty-five (25%) per cent interest in the attorney's fees to be earned in the following cases, to-wit:
>
> 1. Barry and Cynthia Juneau v. American Honda Motor Company, Docket Number 83-4534, Twelfth Judicial District.

Record, volume 1 at 144.

[3]The second document executed by Roy, also entitled "act of assignment," provides:

> For and in consideration of the loan to Chris J. Roy (A Law Corporation), Chris J. Roy (A Law Corporation) and Chris J. Roy, individually, pledge and assign to the Central Louisiana Bank & Trust Company [aka Cottonport Bank] an undivided fifty (50%) per cent interest in the attorney's fees earned and to be earned in the following cases, to-wit:

The Juneau case was settled in 1987 and the settlement provided that the firm was entitled to receive $500,000 in deferred attorney's fees to be paid in five yearly installments. As part of the settlement, Reliance Insurance Company, an insurer of Honda, was to assume the obligation to make the annual payments by purchasing an annuity from United Pacific Life Insurance Company. The annuity is structured to pay the law firm $100,000 each year for five years.

Before the first payment in 1988, Roy wrote a letter to Reliance which instructed that the check should be made payable to the firm and Cottonport as joint payees.[4] The check was received, endorsed by both Roy and Cottonport, and deposited in the firm's bank account at Cottonport Bank. Two days later, Roy sent a $25,000 check to Cottonport Bank which satisfied two previous loans

---

1. Barry and Cynthia Juneau v. American Honda Motor Company, Docket Number 83-4534, Twelfth Judicial District.

Record, volume 1 at 148. The document was amended further on December 16, 1988 when, at the written request of Roy, a handwritten notation increased the percentage of the Juneau fee assigned or pledged to Cottonport Bank to 100%. *See,* Record, volume 1 at 149.

[4]The letter stated:

I understand that neither I nor my corporation are permitted to assign my interest in this matter to anyone that would be binding upon you; nevertheless, I have assigned my interest in my attorney's fees to the Central Bank & Trust Company [aka Cottonport Bank] and would appreciate your having the $100,000 check due me on December 15, 1988, made payable to Chris J. Roy (A Law Corporation) and Central Louisiana Bank & Trust Company.

Record, volume 2 at 205.

made by Cottonport to the firm.  The second annuity payment, issued in November of 1989, was issued to the law firm as the sole payee. One month after the second payment was issued, the check was endorsed by the law firm to Cottonport Bank and applied to the firm's outstanding debts.  Chris Roy instructed Reliance that the third payment should be sent to A.J. Roy, Chris Roy's brother and the president of Cottonport Bank.  In November of 1990, the third payment was sent according to Roy's instructions and the proceeds were applied to the firm's debts.  The 1991 and 1992 payments were paid into the registry of the bankruptcy court.

Kelly, acting as trustee, filed a petition with the bankruptcy court seeking to recover the earlier payments and ensure that the last two payments would be paid to the bankruptcy estate of the firm.  Kelly alleged in his petition that neither a valid assignment nor pledge had been created between the parties and, accordingly, the transaction could not be enforced against the trustee.

The bankruptcy court determined that the parties had created a valid assignment and dismissed Kelly's complaint.  The district court reversed that decision and ordered that the paid funds be returned to the estate and that the remaining payments were the property of the estate.  On appeal, this Court affirmed the district court's decision that there was not a valid assignment. This Court, however, reversed and remanded the case for the bankruptcy court determine whether the transaction between the parties was a valid, enforceable pledge.  The bankruptcy court, on

4

remand, concluded that there was not a perfected pledge and entered a judgment in favor of the trustee. The district court affirmed. The appellant, Cottonport Bank, currently appeals on the issue of whether there was a perfected pledge.

## II.

The Louisiana Civil Code defines a pledge as a contract "by which one debtor gives something to his creditor as a security for his debt".[5] Traditionally, a pledge required the delivery of the security by the debtor to the creditor to be held until the debt was satisfied.[6] The revised statutes, however, provide a method by which incorporeal property can be pledged which does not require delivery.

The bankruptcy and district courts correctly identified the law firm's interest in the Juneau fee as an accounts receivable. This type of interest fits into the category of property identified by the revised statutes as an incorporeal right not evidenced in writing. This type of right can be the subject of a pledge and delivery is not required.[7] The revised statutes, however, do not

---

[5]La.Civil Code article 3133.

[6]La.Civil Code article 3152 provides:

> it is essential to the contract of pledge that the creditor be put in possession of the thing given to him in pledge, and consequently that actual delivery of it be made to him, unless he has possession of it already by some other right.

[7]La.Rev.Stat. 9:4321 provides:

> Claims, credits, obligations, and incorporeal rights in general not evidenced by written instrument or muniment of title, shall be subject to pledge, and may be

5

excuse parties creating a pledge from all formal requirements. Rather, there are two major requirements for a perfected pledge. First, there must be a meeting of the minds and an intent to pledge the property at issue. This intent can be expressed in either a written or oral pledge agreement.[8] Second, the Louisiana revised statutes require that the obligor receive written notice of the pledge or that the obligor acknowledge the pledge in writing.[9]

---

> pledged in the same manner as other property.

> Further, La.Rev.Stat. 9:4322 provides:

> The pledge shall be valid as to all persons without delivery of the claim, credit, obligation, or incorporeal right to the pledgee.

[8]*Vaughn Flying Service v. Costanza,* 590 F.Supp. 1077, 1080-81 (W.D.La.1984); *Bank of Coushatta v. Patrick,* 503 So.2d 1061, 1065 (La.App. 2d Cir.1987); *Citizens Bank & Trust Co. v. Consolidated Terminal Warehouse, Inc.,* 460 So.2d 663, 668 (La.App. 1st Cir.1984). For further discussion of the requirements for a perfected pledge of an incorporeal right not evidenced in writing, see Charles M. Pisano, Comment, *Formal Requirements of Pledge Under Louisiana Civil Code Article 3158 & Related Articles,* 48 *La.L.Rev.* 129, 159-163 (1987).

[9]La.Rev.Stat. 9:4323 provides:

> To bind the obligor to pay the amount due to the pledgee, notice of the pledge shall be given in writing to the obligor or shall be acknowledged in writing by him.

Notice to the obligor is required under the statutes to perfect the pledge. *See, Vaughn Flying Services,* 590 F.Supp. at 1081; *Bank of Coushatta,* 503 S.2d at 1065; *Taylor v. Camel,* 586 So.2d 151, 151 (La.App. 3d Cir.1991). There is some question as to what is required to bind third parties. For a pledge to be effective against third parties, courts may require a written instrument which states the amount of the debt secured by the pledge and the nature of the property pledged. *Citizens Bank and Trust,* 460 So.2d at 669, (holding that to be effective against third parties, there must be written evidence of the pledge which states the amount of the debt secured and the nature

In this case, the written instruments executed by Chris Roy which purport to pledge the Juneau fee seem to indicate Roy's intent to secure the debts owed to Cottonport with the firm's interest in the Juneau fee. The district court, however, concluded that these agreements fail as evidence of a meeting of the minds since they lack specifics regarding the debt secured and the property pledged. The appellant, Cottonport Bank, responds by citing the Louisiana First Circuit Court's decision in *Citizens Bank & Trust v. Consolidated Terminal Warehouse, Inc.*[10]

In *Citizens Bank,* a vendor of timber made it a practice to pledge to its bank invoices reflecting money owed to the vendor by his customers.[11] The vendor would deliver the invoices to its bank and receive in return a loan in the amount of the invoices pledged.[12] On the bottom of the invoices sent to the vendor's customers the following language appeared:

For value received, we hereby pledge and convey the within

---

of the thing pledged); *In re Schrewe,* 108 B.R. 116, 118 (E.D.La.1989) (holding that a "pledge doe not effect third parties unless "the pledge is proved by some written instrument [that states] the species and nature of the thing given in pledge' ") (quoting La.Civil Code article 3158), *but see, Vaughn Flying Services,* 590 F.Supp. at 1081 (holding that a pledge is "valid and effective against third parties without a written act of pledge stating the amount of the debt secured"). This conflict is based on differing interpretations of the Code and revised statutes. According to some courts, pledges of incorporeal movables not evidenced in writing still must meet the requirements of Civil Code article 3158(A).

[10]460 So.2d 663 (La.App. 1st Cir.1984).

[11]*Id.* at 666-67.

[12]*Id.* at 667.

invoice to Citizens Bank & Trust, Plaquemine, La., as collateral attached to my note with full power and authority and in my name to collect the amount of said invoice and you are hereby requested to remit to them direct.[13]

The Louisiana First Circuit Court first concluded that under La.Rev.Stat. 9:4321-4324, no written pledge agreement is required. The court then held that the oral agreement between the bank and the vendor was sufficient since "it was clear that the invoices were being pledged for the amount of the promissory note".[14] Thus, the *Citizens Bank* court, after recognizing that no written pledge agreement is required, accepted the invoices as sufficient evidence of an agreement to pledge.

In this case, Cottonport Bank and Roy executed some form of agreement. Also, the funds loaned to Roy increased with the percentage of the Juneau fee pledged. It seems clear that both Roy and Cottonport Bank intended that Roy's interest in the fees was pledged to secure the loan to Roy by Cottonport Bank. Thus, we disagree with the district court and find that there was sufficient evidence of the intent to pledge.

The remaining issues are the identity of the obligor and whether the obligor received written notice or sent a written acknowledgement. The appellant argues that notice to the obligor is not required to perfect the pledge between itself and the firm's estate. This assertion, however, is contrary to the specific

---

[13]*Id.*

[14]*Id.* at 669.

8

requirements of the revised statutes and the caselaw.[15]  The appellant further argues that Reliance is the obligor who owed the firm the property pledged while the bankruptcy and district court both identified the obligor as Union Pacific, the issuer of the annuity.

Reliance was obligated under the settlement agreement to pay the law firm the fee.  As noted by the district court, however, "Union Pacific is listed as the obligor on the annuity contract".[16] Even assuming that Reliance is considered the obligor, as argued by the appellant, it did not receive formal notice of the pledge from the firm.  Roy did send Reliance a letter in October 1988 which stated, in pertinent part:

> I understand that neither I nor my corporation are permitted to assign my interest in this matter to anyone that would be binding upon you;  nevertheless, I have assigned my interest in my attorney's fees to the Central Bank & Trust Company [aka Cottonport Bank] and would appreciate your having the $100,000 check due me on December 15, 1988, made payable to Chris J. Roy (A Law Corporation) and Central Louisiana Bank & Trust Company.[17]

Based on this letter, the appellant argues that Reliance received

---

[15]*Vaughn Flying Services,* 590 F.Supp. at 1081 (noting that a pledge of this type of right "would be valid without the written act so long as written notice of the pledge is given to, or a written acknowledgment is received from, the obligor");  *Taylor,* 586 So.2d at 151 (holding that a pledge of an incorporeal movable not evidenced in writing was valid because the parties executed a pledge agreement and a representative of the obligor signed an acknowledgement);  *Bank of Coushatta,* 503 S.2d at 1065 (noting that "[t]o perfect a valid pledge of an incorporeal not evidenced by a written instrument either an oral or written act of pledge is required along with written notice of the pledge to the obligor or written acknowledgement by the obligor").

[16]Record, volume 4 at 563.

[17]Record, volume 2 at 205.

notice of the pledge. The letter itself, however, fails to identify the transaction as a pledge nor does it identify the debt secured. Further, this was the only payment that Roy instructed Reliance to pay to the firm and the appellant as joint payees. The remaining payments were paid either to Roy or to his brother, as per Roy's instructions. Although the extent of the notice required under La.Rev.Stat. 9:4323 is unclear, we hold that the single payment instruction sent to Reliance by Roy was insufficient to constitute notice. Thus, the pledge was not perfected and it is unenforceable against the bankruptcy estate.

### III.

Based on the agreements between the firm and the appellant bank, sufficient evidence of a meeting of the minds on the creation of the pledge was presented. The notice sent to Reliance, however, was insufficient to satisfy the notice requirement in La.Rev.Stat. 9:4323. We, therefore, AFFIRM the decision of the district court.